**Mark W. Roth (010708)**
**John J. Hebert (010633)**
**Arturo A. Thompson (025070**
**SHUGHART THOMSON & KILROY, P.C.**
Security Title Plaza
3636 North Central Avenue, Suite 1200
Phoenix, Arizona  85012
Telephone:  (602) 650-2000
Facsimile:  (602) 264-7033
E-Mail: mroth@stklaw.com
E-Mail: jhebert@stklaw.com
E-Mail: athompson@stklaw.com

Attorneys for Debtor

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re: | Chapter 11 Proceedings |
| FULTON HOMES CORPORATION, | Case No.  2-09-bk-1298-GBN |
| Debtor. | |
| Address:     9140 South Kyrene, Suite 202<br>                   Tempe, AZ  85284 | |
| Tax EIN:     86-0298641 | |

**MOTION FOR ORDER
(I) PROHIBITING UTILITY COMPANIES FROM ALTERING, REFUSING OR DISCONTINUING SERVICE, AND (II) ESTABLISHING PROCEDURES FOR DETERMINING REQUESTS FOR ADDITIONAL ADEQUATE ASSURANCE**

Fulton Homes Corporation, ("Fulton"), debtor and debtor-in-possession in the above-captioned proceedings, submit this Motion, requesting the Court to enter an order (i) prohibiting utility companies from altering, refusing or discontinuing service, and (ii) establishing procedures for determining requests for additional adequate assurance (the "Motion").  A request for an expedited hearing on this matter has been filed in conjunction with this Motion because the maintenance of utility services to Fulton is essential to its operations and successful reorganization in this bankruptcy case.   Fulton was current on all its then due payments to its utility companies, and intends to and has the cash assets necessary to remain current going forward. This Motion is

2447170.06

supported by the Declaration of Steven W. Walters in Support of Chapter 11 Petitions and First Day Motions" (the "Walters Declaration"), and the attached Memorandum of Points and Authorities.

DATED January 28, 2009.

SHUGHART THOMSON & KILROY, P.C.

By  */s/ John J. Hebert (#01633)*
John J. Hebert
Mark W. Roth
Arturo A. Thompson
Security Title Plaza
3636 North Central Avenue, Suite 1200
Phoenix, Arizona 85012

Attorneys for Debtor

2447170.06

2

## MEMORANDUM OF POINTS AND AUTHORITIES

**I. FACTUAL BACKGROUND**

The factual and procedural background pertinent to this motion may be summarized as follows:

1. On January 27, 2009, Fulton Homes Corporation (the "Fulton") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2. Fulton is operating its business and managing its assets as a debtor-in-possession in accordance with 11 U.S.C. §§ 1107 and 1108.

3. Fulton is an Arizona corporation engaged in the business of building and selling resident homes and selling residential lots in the state of Arizona.

4. Fulton was founded by Ira Fulton in 1974 and has been a residential home builder since. Through careful management of the company over the succeeding years, Ira Fulton grew the company from one that built less than 100 homes a year to a company that has built in excess of 2,000 homes per year spread across numerous master planned communities.

5. Fulton's real estate holdings consist of 3,430 lots spread over developments in Maricopa and Pinal County. The holdings are in various stages of development ranging from dirt to completed model homes.

6. Fulton has not only supplied jobs and been a vibrant and involved member of the development community in Arizona, it has also been a good corporate citizen as evidenced by, for example, its donation of land to build more than ten new schools. Such donations have amounted to millions of dollars over the years.

7. Fulton's management team operates out is its home office in Tempe, Arizona. Fulton also has sales and development related facilities located at its numerous development sites. In total, Fulton employees approximately 70 people as salaried employees, and brokers. In addition, Fulton's

developments employ numerous persons indirectly as or through various subcontractors that supply services to Fulton. Finally, as a builder, Fulton is also responsible for the purchase of millions of dollars in construction and development related supplies each year. In short, Fulton is an essential part of the state's economy.

8. Fulton has over $6 million in cash as well as $2.1 million in self-funded insurance to operate its business.

9. Fulton intends to continue to build and sell residential homes and lots and reorganize under Chapter 11 of the Bankruptcy Petition.

10. The sale of the Fulton's residential homes and lots are in the ordinary course of the Debtor's business.

11. The main alleged debt in this bankruptcy is a loan from a consortium of banks in which Bank of America is the lead bank. The loan consists of a $250,000,000 unsecured line of credit that has been paid down by over $84,500,000 in the past year. Because the alleged line of credit is unsecured, there are no cash collateral issues present in this case. Thus, Fulton is able to use all its cash to make payments, including the issuance of payroll without implication of the collateral of any of its creditors.

12. Fulton receives utility service from various providers. These providers, set forth in Exhibit "A" attached hereto, supply their services to the home office of Fulton, as well as Fulton's various development communities where sales offices and model homes are located. Fulton relies on the services of these utilities to conduct its business at both the corporate office and at the development communities. A loss of services would cause immediate and substantial harm to Fulton, severely hampering the company's prospects in this bankruptcy case. All of Fulton's utility service providers were paid in full on bills due as of the Petition Date, and will continue to be paid in the ordinary course going forward.

13. Because Fulton's creditors lack any liens on Fulton's cash collateral, and because Fulton has substantial cash on hand and will be generating cash in the bankruptcy, the utility companies are at no risk of going unpaid on a going forward basis.

## II. LEGAL ARGUMENTS

This Court has jurisdiction over this case and this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended General Order of the United States District Court for the District of Arizona dated August 28, 1994, as amended. This is a core proceeding pursuant to U.S.C. § 157(b)(2)(A) and O. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for this motion are §§ 105 and 365 of the Bankruptcy Code.

No trustee or examiner has been appointed, and no official committee of creditors or equity interest holders has yet been established.

Fulton, an Arizona corporation, is a developer of homes at various locations throughout the state of Arizona. Accordingly, venue of all of Debtor's Chapter 11 proceedings is proper in this District under 28 U.S.C. §§ 1408 and 1409.

The relief requested herein is supported by Section 366 of the Bankruptcy Code, which provides in pertinent part:

(a) Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the Court may order reasonable

2447170.06

modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

Whether a utility company is subject to an unreasonable risk of nonpayment must be determined from the facts and circumstances of each case. *See In re Keydata Corp.*, 12 B.R. 156, 158 (B.A.P. 1 Cir. 1981). It is generally recognized that, absent a prepetition default, § 366 does not require a debtor to make deposits to utilities as a form of adequate assurance. *See In re Pacific Gas & Elec. Co.*, 271 B.R. 626, 645 (N.D. Cal. 2002); *see also, In re Caldor, Inc.*, 199 B.R. 1, 3 (S.D.N.Y. 1996), aff'd 117 F.3d 146 (2d. Cir. 1997); *In re Heard*, 84 B.R. 454, 459 (Bankr. W.DTex. 1987). In addition, the legislative history of § 366 supports the conclusion that "[i]t will not be necessary to have a deposit in every case" to provide adequate assurance. H. R. Rep. No. 595 95th Cong. Sess. at 350 (1977); *see also, In re Shirey*, 25 B.R. 247, 249 (Bankr. E.D.Pa. 1982).

Courts have also found deposits unnecessary in cases where the debtor has maintained a good payment history with its utilities. *In re Heard*, 84 B.R. at 459; *In re Coury*, 22 B.R. 766, 767-68 (Bankr. W.D.Pa. 1982). Furthermore, this Court is empowered to provide the relief requested herein pursuant to § 105(a), which allows a bankruptcy court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

By this Motion, Fulton seeks an order (i) prohibiting its prepetition providers of utility services from altering, refusing, or discontinuing services on account of prepetition invoices; and (ii) establishing procedures for determining requests for additional adequate assurance. Such relief is necessary because uninterrupted utility services are critical to Fulton's continued business operations and its ability to reorganize. If utility companies cease providing service to Fulton, Fulton's business will be severely damaged and it will be unable to continue developing and selling homes. Moreover, by granting the relief requested herein, the utility companies will not suffer any tangible

2447170.06

6

economic harm because Fulton will compensate the utility companies in full for any post-petition services they provide.

In connection with the operation of its business, Fulton obtains service for, among other things, water, sewage, natural gas, electricity, telecommunications, and similar utility services (collectively, the "Utility Services") from numerous utility companies (collectively, the "Utility Companies"), that provide their services to one or more of Fulton's operations, including the corporate offices, sales centers, and model homes located at Fulton's developments. A list of the names and addresses of the Utility Companies that provide services to Fulton as of the Petition Date is attached hereto as Exhibit "A".

Section 366 of the Bankruptcy Code prohibits a utility company from discriminating against a debtor based upon the debtor's commencement of a Chapter 11 case or a payment default arising as a result of the bankruptcy filing within the first 20 days of the commencement of the debtor's bankruptcy case (the "Stay Period"). However, upon expiration of the Stay Period, utility companies have the option to alter, refuse, or discontinue services if the debtor does not furnish "adequate assurance of payment" of post-petition utility service obligations. In this case, the Stay Period will expire on or about February 16, 2009.

Uninterrupted utility services are essential to Fulton's ongoing operations and, therefore, to the success of Fulton's reorganization. If the Utility Companies are permitted to terminate Utility Services, even for a short time, Fulton's operations will suffer severe disruptions. As a result, Fulton would be forced to shut down its operations or pay any amounts demanded by the Utility Companies to avoid the cessation of necessary and critical Utility Services. This result is inconsistent with the rehabilitative goals of the Bankruptcy Code.

Fulton submits that adequate assurance for future payments already exists based upon its ability to pay for post-petition services on a current basis going forward. In addition, Fulton has historically made timely and prompt payments to the Utility Companies. And to the best of Fulton's

2447170.06

knowledge, there are currently no defaults or arrearages with respect to undisputed Utility Service invoices, except to the extent that (a) Fulton has not yet been billed for prepetition utility services, (b) Fulton has been billed but payment for such services is not yet due, or (c) checks have been issued but have not yet cleared Fulton's bank accounts.

Because Fulton has no creditors with lien rights to its cash, payment of post-petition bills for utility services will not be an issue. Thus, Fulton will continue its customary practice of paying its utility bills as they become due.

By contrast, requiring Fulton to provide security deposits to cover the Utility Services would cause an unnecessary cash drain that would impede Fulton's ability to reorganize. The negotiations alone would force Fulton to incur substantial administrative costs, diminishing the value of the estate, and hindering the reorganization or potential sale of assets.

For the foregoing reasons, no additional adequate assurance of payment for post-petition Utility Services is warranted, and any such requests should be denied.

Fulton urges the Court to enter an Order in substantially the form submitted herewith. Fulton proposes to mail a copy of the Order to all Utility Companies within three days of its entry. If a Utility Company requests additional adequate assurance within 20 days of the date of the entry of the Order and Fulton believes such request is unreasonable, Fulton shall file a motion for determination of adequate assurance of payment and to set such motion for a hearing. The Utility Company seeking adequate assurance shall be deemed to have adequate assurance of payment until the Court makes its determination the hearing.

Fulton's proposed method of payment for post-petition utility services is in accordance with the spirit and intent of § 366 of the Bankruptcy Code, does not prejudice any rights of the Utility Companies, and is in the best interests of Debtor and its estate.

WHEREFORE, Debtor respectfully requests this Court to enter an order as follows:

2447170.06

8

1. Prohibiting Utility Companies from altering, refusing, and discontinuing services on account of prepetition invoices;

2. Establishing the procedures requested herein for determining requests for additional adequate assurance; and

3. Granting such other and further relief as this Court deems just and appropriate.

DATED January 28, 2009.

SHUGHART THOMSON & KILROY, P.C.

By */s/ John J. Hebert (#01633)*
John J. Hebert
Mark W. Roth
Arturo A. Thompson
Security Title Plaza
3636 North Central Avenue, Suite 1200
Phoenix, Arizona 85012

Attorneys for Debtor

COPY of the foregoing mailed, or served via electronic notification if indicated by an "*" on January 28, 2009, to:

Richard J. Cuellar * Ric.J.Cuellar@usdoj.gov
U. S. TRUSTEE'S OFFICE
230 South 1st Avenue, Suite 204
Phoenix, AZ 85003-1706

Christopher H Bayley * cbayley@swlaw.com
Craig K. Williams   * ckwilliams@swlaw.com
SNELL & WILMER
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2202

By: */s/ T. Simons*

2447170.06

9

# EXHIBIT "A"