# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF ARIZONA

In re

FULTON HOMES CORPORATION

        Debtor.

Case No. 2:09-bk-1298-GBN

Chapter 11

---

## DEBTOR'S FOURTH AMENDED PLAN OF REORGANIZATION

**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1 East Washington, Suite 2700
Phoenix, Arizona  85004-2256
(602) 528-4000
Attorneys:     Craig D. Hansen
              Sean T. Cork
              Kelly Singer
and

Philip M. Oliss (OH Bar No. 0066528) poliss@ssd.com
Jessica D. Goldman (OH Bar No. 0077049) jgoldman@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
4900 Key Tower
127 Public Square
Cleveland, Ohio 44114
(216) 479-8500

Proposed Counsel to Debtor and Debtor-In-Possession

Dated: ~~August 20,~~ September 13, 2010

Phoenix, Arizona

## THIS PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT, AND THE DEBTOR IS NOT YET SOLICITING VOTES ON THIS PLAN UNTIL AFTER THE DISCLOSURE STATEMENT, AS AMENDED,  IS APPROVED BY THE BANKRUPTCY COURT

# TABLE OF CONTENTS

Introduction .................................................................................................................. 1

Article I Definitions, Rules of Interpretation, and Computation of Time ........................... 1

    A.      Scope of Definitions ................................................................................. 1
    B.      Definitions .............................................................................................. 1
    C.      Rules of Interpretation. ......................................................................... 11
    D.      Computation of Time. ........................................................................... 11
    E.      Reference to Monetary Figures. ...................................................... ~~11~~12
    F.      Exhibits. ................................................................................................ 12

Article II Treatment of Unclassified Claims ................................................................... 12

    2.1     Unclassified Claims. .............................................................................. 12
    2.2     Allowed Administrative Claims. ............................................................ 12
    2.3     Preserved Ordinary Course Administrative Claims. ............................. 12
    2.4     Allowed Priority Tax Claims. ........................................................... ~~12~~13
    2.5     Allowed Other Priority Claims. ............................................................. 13
    2.6     Professional Claims. .............................................................................. 13

Article III Classification of Claims and Equity Interests ................................................ 13

    3.1     Secured Claims. ............................................................................... ~~13~~14
    3.2     Unsecured Claims. ................................................................................ 14
    3.3     Equity Interests. .................................................................................... 14

Article IV Treatment of Claims and Interests ................................................................. 14

    4.1     Class 1 – Secured Vendor Claims. ......................................................... 14
    4.2     Class 2 – Secured Tax Claims. ............................................................... 15
    4.3     Class 3 – Bank Group Claims. ............................................................... 16
    4.4     Class 4 – General Unsecured Claims. .................................................... 17
    4.5     Class 5 – Queen Creek Claims. .............................................................. 17
    4.6     Class 6 - Unsecured Warranty Claims. .................................................. 17
    4.7     Class 7 - Fulton Unsecured Claim. ........................................................ 17
    4.8     Class 8 – Equity Interests. ............................................................... ~~17~~18

Article V Acceptance or Rejection of the Plan; Effect of Rejection By One or More Impaired
Classes of Claims or Equity Interests ............................................................................ 18

    5.1     Impaired Classes of Claims Entitled to Vote. ........................................ 18
    5.2     Classes Deemed to Accept the Plan. ..................................................... 18
    5.3     Acceptance By Impaired Classes. .......................................................... 18
    5.4     Classes Deemed to Reject the Plan. ...................................................... 18
    5.5     Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code. .......... ~~18~~19

Article VI Implementation of the Plan. ...................................................................... ~~18~~19

    6.1     Sources of Consideration for Plan Distributions. ............................. ~~18~~19
    6.2     Continued Corporate Existence. ..................................................... ~~19~~20
    6.3     Cancellation of Securities, Instruments and Agreements. ..................... 20

| | | |
|---|---|---|
| 6.5 | Effectiveness of New Securities, Instruments, Agreements and Documents. | 20 |
| 6.6 | No Corporate Action Required. | 20 |
| 6.7 | Officers and Directors. | 20 |
| 6.8 | Operations Pending Effective Date. | 21 |
| 6.9 | Exemption from Transfer Taxes. | 21 |
| 6.10 | Tax Considerations. | 21 |
| 6.11 | Payment of Trustee Fees. | ~~21~~22 |

**ARTICLE VII Provisions Governing Distributions** ........................................... 22

| | | |
|---|---|---|
| 7.1 | Distributions on Account of Claims Allowed as of the Effective Date. | 22 |
| 7.2 | Distribution on Account of Claims Allowed after the Effective Date. | 22 |
| 7.3 | Delivery of Distributions. | 23 |
| 7.4 | Claims Paid or Payable by Third Parties. | ~~24~~25 |

**Article VIII Executory Contracts and Unexpired Leases** .............................. 25

| | | |
|---|---|---|
| 8.1 | Assumption and Rejection of Executory Contracts and Unexpired Leases. | 25 |
| 8.2 | Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. | 26 |
| 8.3 | Pre-Existing Obligations to the Debtor under Executory Contracts and Unexpired Leases. | 27 |
| 8.4 | Claims Based on Rejection of Executory Contracts and Unexpired Leases. | 27 |
| 8.5 | Modification of Executory Contracts and Unexpired Leases Containing Equity Ownership Restrictions. | 27 |
| 8.6 | Modifications, Amendments, Supplements, Restatements, or Other Agreements. | 27 |
| 8.7 | Reservation of Rights. | ~~27~~28 |
| 8.8 | Nonoccurrence of Effective Date. | 28 |

**Article IX Determination of Claims** ................................................................ 28

| | | |
|---|---|---|
| 9.1 | Objections to Claims. | 28 |
| 9.2 | Distributions on Allowance or Disallowance of Disputed Claims. | 28 |
| 9.3 | Contingent Claims. | 28 |

**Article X Title to Property; Vesting of Assets** .............................................. ~~28~~29

| | | |
|---|---|---|
| 10.1 | Vesting of Assets. | ~~28~~29 |
| 10.2 | Discharge. | 29 |
| 10.3 | Discharge Injunction. | 29 |
| 10.4 | Releases and Related Matters | ~~29~~30 |
| 10.5 | Preservation of Insurance. | 30 |

**Article XI Preservation of Litigation Claims** ............................................... 30

| | | |
|---|---|---|
| 11.1 | Retention and Reservation. | 30 |
| 11.2 | Prosecution. | 30 |

**Article XII Conditions Precedent** ................................................................... 30

| | | |
|---|---|---|
| 12.1 | Conditions to Confirmation. | 30 |
| 12.2 | Conditions to the Effective Date. | ~~30~~31 |
| 12.3 | Waiver of Conditions. | 31 |

**Article XIII Retention of Jurisdiction**.................................................................. **31**

13.1      **Retention of Jurisdiction.** ............................................................ 31

**Article XIV Miscellaneous Provisions**.......................................................... **~~32~~33**

14.1      **Effecting Documents; Further Transactions; Timing**....................... **~~32~~33**
14.2      **Binding Effect**................................................................................. **~~32~~33**
14.3      **Governing Law**................................................................................ 33
14.4      **Modification of Treatment of Claims**.............................................. 33
14.5      **Setoffs and Recoupment**.................................................................. 33
14.6      **Notices**............................................................................................ 33
14.7      **Delivery of Notices**.......................................................................... 34
14.8      **Severability**...................................................................................... 34
14.9      **Plan Documents**............................................................................... 34
14.10     **Inconsistency**.................................................................................... 34
14.11     **Subordination**.................................................................................. **~~34~~35**
14.12     **Withholding and Reporting Requirements**.................................... **~~34~~35**
14.13     **Post-Effective Date Fees; Final Decree**........................................... 35
14.14     **IRS Circular 230 Notice.**................................................................. 35

### PLAN SUPPLEMENT EXHIBITS

Exhibit A -- Amended and Restated Credit Agreement

Exhibit B -- New Note

Exhibit C -- Amended Articles of Organization

Exhibit D -- List of Avoidance Actions

Exhibit E -- List of Assumed Executory Contracts and Unexpired Leases

Exhibit F -- List of Rejected Executory Contracts and Unexpired Leases

Exhibit G -- Liquidation Analysis

Exhibit H -- Feasibility Analysis

Exhibit I -- Plan Contribution Agreement

Exhibit J -- Schedule of Compensation of Officers and Directors of Reorganized Debtor

Exhibit K -- List of Preserved Litigation Claims

## INTRODUCTION

Fulton Homes Corporation, debtor and debtor-in-possession in the above-captioned Chapter 11 case, hereby proposes the following Fourth Amended Plan of Reorganization for the resolution of the outstanding Claims against and Equity Interests in the Debtor. Capitalized terms used herein shall have the meanings ascribed to such terms in Article I.B. of this Plan. The Debtor is a proponent of this Plan within the meaning of Section 1129 of the Bankruptcy Code.

Under Section 1125(b) of the Bankruptcy Code, a vote to accept or reject this Plan cannot be solicited from a holder of a Claim or Equity Interest until such time as the Disclosure Statement has been approved by the Bankruptcy Court and distributed to holders of Claims and Equity Interests. In this case, the Bankruptcy Court entered an order approving the Disclosure Statement, as amended, and authorizing the Debtor to commence solicitation of votes to accept or reject this Plan on _____, 2010, and such Disclosure Statement has been distributed simultaneously with this Plan to all parties whose votes are being solicited. The Disclosure Statement contains, among other things, a discussion of the Debtor's history, business, properties and operations, risk factors associated with the Plan, a summary and analysis of this Plan, and certain related matters including, among other things, the securities to be issued pursuant to this Plan by the Reorganized Debtor.

ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT AND RELATED SOLICITATION MATERIALS IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN. .

Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in Section 14.4 of this Plan, the Debtor expressly reserves the right to alter, amend, modify, revoke or withdraw this Plan, one or more times, prior to this Plan's substantial consummation.

## ARTICLE I
## DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME

**A.    Scope of Definitions**

For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article I.B. of this Plan. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

**B.    Definitions**

As used in this Plan, the following terms have the following meanings:

**1.1    Administrative Agent.**  Bank of America, N.A., as administrative agent for the Bank Group under the Pre-Petition Loan Agreement.

**1.2    Administrative Claim**. A Claim for any cost or expense of administration of the Chapter 11 Case Allowed under Bankruptcy Code §§ 503(b), 507(b) or 546(c)(2) and entitled to priority under Bankruptcy Code § 507(a)(1), including: (a) fees payable under 28 U.S.C. § 1930; (b) actual and necessary costs and expenses incurred in the ordinary course of the Debtor's business; (c) actual and necessary costs

and expenses of preserving the Estate or administering the Chapter 11 Case; and (d) all Professional Claims to the extent Allowed by Final Order under Bankruptcy Code §§ 330, 331, or 503.

**1.3** **Administrative Claims Bar Date.** The deadline for filing proofs or requests for payment of Administrative Claims, which shall be thirty (30) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court, except with respect to Professional Claims, which shall be subject to the provisions of Section 3.5 hereof.

**1.4** **Affiliate.** With respect to any specified Person, any other Person directly or indirectly controlling or controlled by or under direct or indirect common control with such Person and, with respect to any specified natural Person, any other Person having a relationship by blood, marriage, or adoption not more remote than first cousins with such natural Person. For purposes of this definition, "controlling" (including, with correlative meanings, the terms "controlled by" and "under direct or indirect common control with"), as used with regard to any Person, means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of that Person, whether through the ownership of voting securities, by agreement, or otherwise.

**1.5** **Allowed.** A Claim that has been allowed by a Final Order or with respect to any Claim against, or Equity Interest in, the Debtor: (a) proof of which, request for payment of which, or application for allowance of which, was filed or deemed filed with the Bankruptcy Court on or before the Bar Date, the Administrative Claim Bar Date, the Professional Claim Bar Date, or the Rejection Claim Bar Date, as applicable, for filing proofs of claim or equity interest or requests for payment for Claims of that type against the Debtor or other applicable date established by order of the Bankruptcy Court, even if that date is after the Bar Date, the Administrative Claim Bar Date, the Professional Claim Bar Date, or the Rejection Claim Bar Date, as applicable; and (b) to which no objection to its allowance or motion to estimate for purposes of allowance has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or, as to which any such objection or motion has been interposed, to the extent allowed by a Final Order. The term "Allowed," when used to modify a reference in this Plan to any Claim, Equity Interest, Class of Claims, or Class of Equity Interests, means a Claim or Interest (or any Claim or Interest in any Class) that is so allowed.

**1.6** **Amended and Restated Organizational Documents.** The articles of incorporation and bylaws of the Reorganized Debtor, amended and restated to the extent necessary to comply with the provisions of Section 1123(a)(6) of the Bankruptcy Code, in substantially the form attached as an Exhibit to the Plan Supplement.

**1.7** **Amended and Restated Credit Agreement.** The amended and restated credit agreement between the Borrowers and the holders of Allowed Bank Group Claims. The Amended and Restated Credit Agreement will be attached as an Exhibit to the Plan Supplement.

**1.8** **Avoidance Actions.** All statutory causes of action under Bankruptcy Code §§ 510, 542, 543, 544, 545, 547, 548, 549, 550, and 553 that the Debtor or the Estate may have against any Person including, but not limited to, those listed in the Plan Supplement. Failure to list an Avoidance Action in the Plan Supplement does not constitute the waiver or release of that Avoidance Action.

**1.9** **Ballot.** Each of the ballot forms that are distributed with the Disclosure Statement to Claimholders included in Classes that are Impaired under this Plan and entitled to vote under Article V of this Plan to accept or reject this Plan.

**1.10** **Bank Group**.  Bank of America, N.A., on its own and as administrative agent for JPMorgan Chase Bank, N.A., Compass Bank, Guaranty Bank, and Wachovia Bank, all of whom comprise the consortium of lenders under the Pre-Petition Credit Agreement.

**1.11** **Bank Group Claims**.  All general unsecured claims of the Bank Group arising under the Pre-Petition Credit Agreement, which will be Allowed in the amount of:  (i) $163,488,654.82 in unpaid principal and pre-petition interest; (ii) accrued and unpaid interest from the Petition Date through and including the Effective Date at the Federal Judgment Rate; (iii) reasonable and actual fees and expenses of the restructuring professionals of the Bank Group in an amount determined by the Bankruptcy Court or otherwise agreed to by the Debtor and the Bank Group; and (iv) reasonable and actual fees payable to the Administrative Agent under the Pre-Petition Credit Agreement, to the extent such fees are Allowed by the Bankruptcy Court.

**1.12** **Bank Group Collateral.**  All of the Reorganized Debtor's: (i) real property assets, including, without limitation, lots, units, leaseholds and fixtures; (ii) inventory and other goods; (iii) accounts receivable; (iv) Cash and bank accounts of the Borrowers; and (v) all proceeds of any of the foregoing; <u>provided</u>, <u>however</u>, that the Bank Group Collateral will not include any asset that either Borrower acquires after the Effective Date with third-party financing.

**1.13** **Bank Group Effective Date Cash Payment.**  A payment to be made on the Effective Date by the Borrowers to the Bank Group, which shall equal the difference between: (i) the Cash of the Borrowers as of the Effective Date, less (ii) the sum of (a) the Maximum Reserves, (b) the amount of estimated and Allowed Administrative Claims, and (c) the payment of Allowed or estimated Secured Tax Claims, Secured Vendor Claims, the Queen Creek Claim, and General Unsecured Claims that are required to be paid on the Effective Date  or subject to a reasonable reserve if such Claims are Disputed as the Effective Date, <u>provided</u>, <u>however</u>, that the Bank Group Effective Date Cash Payment shall not be less than $30 million or greater than $35 million.

**1.14** **Bankruptcy Code.**  Title 11 of the United States Code, as amended from time to time and applicable to the Chapter 11 Cases.

**1.15** **Bankruptcy Court.**  The United States Bankruptcy Court for the District of Arizona, or such other court having jurisdiction over the Chapter 11 Case.

**1.16** **Bankruptcy Rules.**  The Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Cases or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Cases or proceedings therein, as the case may be.

**1.17** **Bar Date.**  The deadline set by the Bankruptcy Court for filing Proofs of Claim in the Chapter 11 Case.

**1.18** **Borrowers.**  The Reorganized Debtor and Fulton Sales.

**1.19** **Business Day.**  Any day other than a Saturday, Sunday, or legal holiday (as defined in Bankruptcy Rule 9006).

**1.20** **Cash.**  Currency, checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks, money orders, negotiable instruments, and wire transfers of immediately available funds.

**1.21    Chapter 11 Case.**  The Chapter 11 Case of the Debtor pending in the Bankruptcy Court under Case No. 2:09-bk-1298-GBN.

**1.22    Claim.**  A claim against the Debtor or its property as defined in Bankruptcy Code § 101(5), including: (a) any right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured arising at any time before the Effective Date; or (b) any right to an equitable remedy for breach of performance if the breach gives rise to a right to payment, whether or not the right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**1.23    Claims Register.**  The official register of Claims and Equity Interests maintained by the Debtor.

**1.24    Class.**  A category consisting of holders of Claims or Equity Interests substantially similar in nature to the Claims under the Plan.

**1.25    Collateral.**  Any property or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim, the Lien not being subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

**1.26    Confirmation Date.**  The date the Bankruptcy Court enters the Confirmation Order.

**1.27    Confirmation Hearing.**  The hearing at which the Confirmation Order is first considered by the Bankruptcy Court.

**1.28    Confirmation Order.**  The order of the Bankruptcy Court confirming this Plan in accordance with the Bankruptcy Code. The Confirmation Order need not necessarily be a Final Order.

**1.29    Contingent Claim.**  Any Claim for which a proof of claim has been filed with the Bankruptcy Court that: (a) was not filed in a fixed amount, or has not accrued and depends on a future event that has not occurred and may never occur; and (b) has not been Allowed on or before the Confirmation Date.

**1.30    Creditor.**  Any holder of a Claim, whether or not the Claim is an Allowed Claim, encompassed within the statutory definition set forth in Bankruptcy Code § 101(10).

**1.31    Cure.**  The distribution in the ordinary course of business as soon as reasonably practicable following the Effective Date of a Cure Amount in Cash, or such other property as may be ordered by the Bankruptcy Court or agreed upon by the parties.

**1.32    Cure Amount.**  The amount equal to all unpaid monetary obligations under applicable law which are required to be paid under section 365(b) of the Bankruptcy Code or such lesser amount as may be agreed upon by the parties, under an executory contract or unexpired lease assumed pursuant to section 365 of the Bankruptcy Code, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

**1.33    Cure Bar Date.**  The deadline for filing requests for payment of Cure, which shall be the later of:  (a) thirty days after the Effective Date; or (b) thirty days after the date of any notice of assumption of the applicable executory contract or unexpired lease, unless otherwise ordered by the Bankruptcy Court or agreed to by the Debtor and the counterparty to the applicable executory contract or unexpired lease.

**1.34     Debtor.**  Fulton Homes Corporation.

**1.35     Disallowed.**  In reference to a Claim, a Claim or any portion of a Claim that has been disallowed, overruled, withdrawn, or expunged by Final Order.

**1.36     Disclosure Statement.**  The written disclosure statement relating to this Plan (including all Exhibits and schedules) in the form approved by the Bankruptcy Court under Bankruptcy Code § 1125 and Bankruptcy Rule 3017.

**1.37     Disputed.**  With respect to Claims or Equity Interests, any Claim or Equity Interest: (a) listed in the Schedules as unliquidated, disputed, or contingent, or as to which the Debtor or any other party-in-interest has (i) interposed a timely objection or request for estimation; or (ii) sought to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules, in each instance where such listing, objection, request for estimation, or action to limit recovery has not been withdrawn or determined by a Final Order; or (b) that is a Contingent Claim.

**1.38     Distribution.**  Payments in Cash or distributions of other property made pursuant to the Plan.

**1.39     Distribution Agent.**  The Person responsible for making or facilitating Distributions to holders of Allowed Claims under the Plan.  The Distribution Agent shall be: (a) the Administrative Agent, or the Person chosen by the Administrative Agent, with respect to Distributions to the holders of Allowed Bank Group Claims; and (b) the Reorganized Debtor, or the Person chosen by the Reorganized Debtor, with respect to Distributions to the holders of all other Allowed Claims, except for Allowed Bank Group Claims.

**1.40     Distribution Record Date.**  The date for determining the Holders of Allowed Claims and Interests who are eligible to receive Distributions pursuant to the Plan, which shall be the Confirmation Date or such other date as designated in the Plan or a Bankruptcy Court order.

**1.41     Distribution Reserve**.  The Reorganized Debtor shall determine the reserve, if any, to be established and maintained by the Reorganized Debtor for purposes of making Distributions to holders of Disputed Claims if and when such Disputed Claims become Allowed General Unsecured Claims.

**1.42     Effective Date.**  The first Business Day that is eleven days after the Confirmation Date and on which (a) no stay of the Confirmation Order is in effect, and (b) all conditions to effectiveness set forth in Article XII of this Plan have been satisfied or waived in accordance with the terms of this Plan.

**1.43     Equity Interest**.  The legal, equitable, contractual and other rights of any Person with respect to membership or ownership interests in the Debtor, or any other equity securities of or ownership interests in the Debtor, including, but not limited to, any Equity Related Claims.

**1.44     Estate.**  The bankruptcy estate for the Debtor created by virtue of Bankruptcy Code § 541 upon commencement of the Chapter 11 Case.

**1.45     Exchange Act.**  The Securities Exchange Act of 1934, as amended, and the regulations promulgated under that act.

**1.46     Exhibit**.  An exhibit annexed to either this Plan, the Plan Supplement or as an appendix to the Disclosure Statement.

**1.47    Existing Credit Documents.**  The Pre-Petition Loan Agreement, and all documents and guarantees required under or otherwise executed in connection with the Pre-Petition Loan Agreement.

**1.48    Final Order.**  An order or judgment of the Bankruptcy Court: (a) as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired, or as to which any right to appeal, petition for certiorari, reargue, or rehear has been waived in writing in form and substance satisfactory to the Debtors; and (b) if an appeal, writ of certiorari, or reargument or rehearing has been sought, as to which the highest court to which the order was appealed, or certiorari, reargument or rehearing was sought, has determined or denied the appeal, writ of certiorari, reargument, or rehearing, and the time to take any further appeal, petition for writ of certiorari, or move for reargument or rehearing has expired; but the filing of a motion under Rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, with respect to the order does not prevent the order from being a Final Order.

**1.49    Fulton Family Trust.**  The Ira A. Fulton and Mary Lou Fulton Family Trust, dated December 17, 1982.

**1.50    Fulton Sales.**  Fulton Homes Sales Corporation.  Fulton Sales is not a Debtor in this Chapter 11 Case.

**1.51    Fulton Sales Reimbursement Payment.**  A payment made on the Effective Date by Fulton Sales to the Debtor in an amount equal to any intercompany charges.

**1.52    Fulton Sales Stock Contribution.**  The contribution by the Fulton Family Trust of all of the outstanding equity interests in Fulton Sales to the Reorganized Debtor.  The Fulton Sales Stock Contribution will occur on the Effective Date in the manner set forth in Article VI of this Plan.

**1.53    Fulton Unsecured Claim.**  The unsecured Claim of Ira A. Fulton against the Debtor arising from advances made by Ira A. Fulton to the Debtor as evidenced by those certain notes issued to Ira A. Fulton by the Debtor, as amended and updated from time to time.  This Claim is contractually subordinated to the repayment of the Bank Group Claims.  The current amount of outstanding principal under this Claim is approximately $25,000,000.00.

**1.54    Fulton Warranty.**  Fulton Homes Warranty Corporation.  Fulton Warranty is not a Debtor in this Chapter 11 Case.

**1.55    General Unsecured Claim.**  Any Claim against the Debtor that is unsecured and not subject of any Lien or priority or administrative status under the Bankruptcy Code, provided that a General Unsecured Claim shall not include: (a) a Secured Claim; (b) an Administrative Claim; (c) a Secured Vendor Claim; (d) a Secured Tax Claim; (e) a Priority Claim; (f) the Bank Group Claims; (g) the Queen Creek Claim; (h) the Fulton Unsecured Claim; and (i) an Unsecured Warranty Claim.

**1.56    ~~Home Sales.~~  ~~The sale of lots or single-family residential units to a third party by the Reorganized Debtor or Fulton Sales on and after the Effective Date.~~Gross Sales Price.  The gross sales price of a Unit or Non-Unit set forth in the purchase contract (expressed in U.S. Dollars), less any third party improvements financed through such sale for which neither Borrowers, nor any of their respective Affiliates or subsidiaries will receive payment, including, without limitation, costs for landscaping, window covering, pools, or other improvements that are included in the gross sales price for purposes of financing such improvements.**

**1.57** **Impaired**. Any Claim or Equity Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.58** **Initial Distribution Date**. The first Business Day after the Effective Date or as soon thereafter as is practical on which distributions are made to holders of Allowed Claims under the Plan.

**1.59** **IRS.** The Internal Revenue Service.

**1.60** **Lien.** A lien as defined in Bankruptcy Code § 101(37), except a lien that has been avoided in accordance with Bankruptcy Code §§ 544, 545, 546, 547, 548, or 549.

**1.61** **List of Reorganized Officers.** A schedule identifying the officers of the Reorganized Debtor as of the Effective Date. The List of Reorganized Officers is attached as an Exhibit to the Plan Supplement.

~~**1.62** **Lot Release Price.** An amount equal to 21% of the gross sales price for a Home Sale excluding any third party improvements financed through such sale for which neither Borrower nor any affiliate or subsidiary of Borrower will receive payment (e.g., installation of landscaping, window coverings, and/or a pool by a third party the costs for which are included in the price of the home for purposes of financing such improvements).~~

**1.62** ~~1.63~~ **Maximum Lot Reserve.** A lot acquisition reserve to fund the acquisition and development of real property necessary to implement the Borrowers' business plan; <u>provided</u>, <u>however</u>, that such reserve will not exceed $20 million.

**1.63** ~~1.64~~ **Maximum Reserves.** Collectively, the Maximum Lot Reserve and the Maximum Working Capital Reserve.

**1.64** ~~1.65~~ **Maximum Working Capital Reserve.** A working capital reserve to fund working capital necessary to implement the Borrowers' business plan; <u>provided</u>, <u>however</u>, that such reserve will not exceed $20 million.

**1.65** ~~1.66~~ **Net Cash Proceeds.** The ~~cash proceeds from a Home Sale, net of (i) customary expenses set forth on the HUD statement for such Home Sale, and (ii~~<u>Gross Sales Price of a Unit or Non-Unit (expressed in U.S. Dollars), less (i) customary tax and assessment prorations; (ii) reasonable and customary real estate brokerage commissions paid to third party brokers unaffiliated with the Borrowers or any Affiliate of the Borrowers; (iii) reasonable and customary closing costs; and (iv</u>) an amount that will enable each of Borrowers' shareholders to pay ~~estimated state and federal taxes arising from the gain allocated to such shareholder as a result of such sale, taking into account the combined maximum marginal rate for federal income tax purposes, the federal self-employment tax rate, and the highest marginal rate for state and local income tax purposes (using the highest combined marginal rate of the state and locality in which the Borrowers do business)~~<u>Income Taxes</u>.

**1.66** ~~1.67~~ **New Credit Facility.** The new, secured credit facility to be entered into between the Borrowers and the Bank Group on the Effective Date, pursuant to which the New Note will be issued to the holders of Allowed Bank Group Claims.

**1.67** ~~1.68~~ **New Loan Documents.** Collectively, the Amended and Restated Credit Agreement, the New Note, and any related documents and agreements in connection therewith.

**1.68** ~~1.69~~ **New Note.** A term note in the face amount of the New Note Face Amount. The New Note matures on the sixth anniversary of the Effective Date. The New Note shall bear interest at LIBOR + 4.00%, subject to a LIBOR floor of 2.00%, provided, however, that if the outstanding principal amount of the New Note on the third anniversary of the Effective Date is equal to or less than $75 million, the interest rate will be reduced to LIBOR + 2.00%, subject to a LIBOR floor of 2.00. The New Note will be attached as an Exhibit to the Plan Supplement.

**1.69** ~~1.70~~ **New Note Face Amount.** An amount equal to the sum of: (a) the Allowed Bank Group Claims as of the Effective Date; minus (b) the Bank Group Effective Date Cash Payment.

**1.70** ~~1.71~~ **Non-Debtor Affiliates.** The Affiliates of the Debtor that have not commenced cases under Chapter 11 of the Bankruptcy Code, which are identified on an Exhibit to the Plan Supplement.

**1.71** **Non-Unit.** Any Bank Group Collateral consists of any Unentitled land, Entitled Land, Lots Under Development, or Finished Lots, as those terms are defined in the Amended and Restated Credit Agreement.

**1.72** **Other Priority Claim.** Any Claim (or portion of a Claim) entitled to priority under Bankruptcy Code § 507(a) other than Priority Tax Claims and Administrative Claims.

**1.73** **Person.** Any individual, corporation, partnership, limited liability company, limited liability partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, governmental agency or associated political subdivision.

**1.74** **Petition Date.** The date on which the Debtor filed its voluntary petition for relief in the Bankruptcy Court, which date is January 27, 2009.

**1.75** **Plan.** This Plan, either in its present form or as it may be amended, supplemented, or modified from time to time in accordance with the terms of this Plan, including, except where the context otherwise requires, all its annexed exhibits.

**1.76** **Plan Contribution Agreement.** That certain agreement between Ira A. Fulton and the Reorganized Debtor pursuant to which the holders of Allowed Equity Interests in the Debtor and Fulton Sales consent to the provisions of the Plan necessary to implement the Plan, including, without limitation: (a) Fulton Sales becoming a co-Borrower under the Amended and Restated Credit Agreement; (b) Fulton Sales pledging its unrestricted Cash to the holders of Allowed Bank Group Claims; (c) the conversion of the Fulton Unsecured Claim into equity of the Reorganized Debtor; (d) the making of the Fulton Sales Contribution; and (e) any other actions required to be taken by holders of Allowed Equity Interests pursuant to Article 4.7 of this Plan.

**1.77** **Plan Documents.** Collectively: (a) the Amended and Restated Organizational Documents; (b) the Amended and Restated Credit Agreement; (c) the New Note; and (d) the list of Avoidance Actions; copies of which shall be filed with the Bankruptcy Court as part of the Plan Supplement, and any other contracts, instruments, releases and other agreements or documents to be executed in order to consummate the transactions contemplated under this Plan or otherwise necessary to effect and further evidence the terms and conditions of this Plan.

**1.78** **Plan Supplement.** The compilation of documents and form of documents, exhibits and schedules necessary and appropriate to implement the terms of the Plan.

**1.79    Plan Supplement Filing Date.**  The date that is no later than August 26, 2010 or such other date that may be approved by the Bankruptcy Court on notice to parties in interest.

**1.80    Pre-Petition Loan Agreement.**  That certain Revolving Credit Agreement dated May 5, 2000, as amended from time to time, between the Debtor as borrower, the Administrative Agent, and the Bank Group, and any other lenders from time to time party thereto, and all guaranty agreements, and all other loan documents related thereto.

**1.81    Preserved Litigation Claims.**  Subject to the releases provided for in Section 10.4 of this Plan, all rights, claims, torts, liens, actions, causes of action, avoiding powers, proceedings, debts, contracts, judgments, offsets, damages, and demands in law or in equity, whether known or unknown, contingent or otherwise, that the Debtor or the Estate (through an official committee or otherwise) has brought or may have against any Person, including, without limitation, those listed in the Plan Supplement.  Failure to list a Preserved Litigation Claim in the Plan Supplement does not constitute the Debtor's, the Estate's, or the Reorganized Debtor's waiver or release of that Preserved Litigation Claim.  Preserved Litigation Claims shall not include any Claims against any of the Released Parties.

**1.82    Preserved Ordinary Course Administrative Claim.**  Any Administrative Claim based on liabilities incurred by a Debtor in the purchase, lease, or use of goods and services in the ordinary course of its business including Administrative Claims on account of services provided after the Petition Date to the Debtor by its employees, and Claims for unpaid rent or contract payments arising under a rejected executory contract or unexpired lease of nonresidential real property after the Petition Date and before the effective date of the rejection of that contract or lease, but excluding Professional Claims.

**1.83    Priority Tax Claim.**  Any Claim of a governmental unit entitled to priority under Bankruptcy Code § 507(a)(8).

**1.84    Professional.**  A Person: (a) employed in the Chapter 11 Case in accordance with an order of the Bankruptcy Court under Bankruptcy Code §§ 327, 328, 363, or 1103 and to be compensated for services under Bankruptcy Code §§ 327, 328, 329, 330, and 331 or order of the Bankruptcy Court; or (b) for whom compensation and reimbursement has been Allowed by a Final Order under Bankruptcy Code § 503(b).

**1.85    Professional Claim.**  An Administrative Claim for compensation and reimbursement of expenses of a Professional rendered or incurred before the Effective Date submitted in accordance with Bankruptcy Code §§ 328, 330, 331, or 503(b).

**1.86    Professional  Claim Bar Date.**  The first Business Day that is 60 days after the Effective Date.

**1.87    Pro Rata.**  A proportionate share, such that the ratio of the consideration distributed on account of an Allowed Claim or Equity Interest in a Class to the amount of such Allowed Claim or Equity Interest is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims or Equity Interests in that Class to the amount of all Allowed Claims or Equity Interests in that Class.

**1.88    Proof of Claim.**  A proof of Claim Filed against any the Debtor in the Chapter 11 Case.

**1.89    Q-Sub Election.**  An election by the Debtor or Reorganized Debtor, as applicable, to treat Fulton Sales as a qualified subchapter S subsidiary in connection with the Tax Reorganization.  The Q-Sub Election will occur in the manner set forth in Article VI of this Plan.

**1.90    Queen Creek.**  The town of Queen Creek, Arizona.

**1.91    Queen Creek Claim.**  The unsecured claim of Queen Creek arising from the development agreement between the Debtor and Queen Creek in 2007 concerning the Debtor's development of a community commonly referred to as "Ironwood Crossing," and any other documents or claims arising under or associated therewith.

**1.92    Rejection Claims.**  All Claims arising from the Debtor's rejection of an executory contract or unexpired lease of nonresidential real property either during the Chapter 11 Case or in connection with this Plan, including Claims for future rents under Bankruptcy Code § 502(b)(6) or future contract payments and General Unsecured Claims for unpaid rent or contract payments accruing before the Petition Date.  Rejection Claims do not include Claims for unpaid rent or contract payments arising under a rejected executory contract or unexpired lease of nonresidential real property after the Petition Date and before the effective date of the rejection of such contract or lease.

**1.93    Rejection Claims Bar Date.**  The earlier of: (a) 30 Business Days following the entry of the order of the Bankruptcy Court approving such rejection, provided the effectiveness of such order has not been stayed; and (b) 30 Business Days following the Effective Date of the Plan.

**1.94    Reorganized Debtor.**  The Debtor, on and after the Effective Date.

**1.95    Released Parties.**  Each of the Debtor, the Reorganized Debtor, Fulton Sales, Fulton Warranty, and each of their respective current and former officers, directors, employees, representatives and agents.

**1.96    Schedules.**  The schedules of assets and liabilities, the list of holders of Equity Interests, and the statements of financial affairs filed by the Debtor under Bankruptcy Code § 521 and Bankruptcy Rule 1007, as the schedules, list, and statements may have been or may be supplemented or amended from time to time.

**1.97    Secured Claim.**  Any Claim (a) listed in the Schedules as a liquidated, noncontingent, and undisputed secured Claim, or (b) reflected in a proof of claim as a secured Claim, secured by a Lien on Collateral to the extent of the value of the Collateral, as determined in accordance with Bankruptcy Code § 506(a), or, if the Claim is subject to setoff under Bankruptcy Code § 553, net of the setoff.

**1.98    Secured Tax Claim.**  Any Claim of any governmental unit or associated political subdivision, including property taxes and accrued and unpaid interest under applicable law from the Petition Date, that is secured by a Lien on property of an Estate by operation of applicable law including every Claim for unpaid real, personal property, or *ad valorem* taxes.  For the avoidance of doubt, Secured Tax Claims include the claims of Maricopa and Pinal Counties.

**1.99    Secured Vendor Claim.**  Any Claim of a Person arising from the provision of goods and services to the Debtor before the Petition Date, that is: (a) secured by a Lien on property of the Estate, including a mechanic's lien or similar lien; (b) entitled to administrative expense priority under Section 503(b)(9) of the Bankruptcy Code; or (c) for which a right of reclamation exists under Section 546 of the Bankruptcy Code or applicable non-bankruptcy law.  For the avoidance of doubt, Secured Vendor Claims

include claims for vertical or horizontal construction at the development communities commonly referred to as "Cobblestone", "Coldwater Springs", "Cortina", "Fulton Estates", "Royal Ranch", "Villago", "Freeman Farms", "Fulton Ranch", "Geneva Estates", and "Ironwood Crossing."

**1.100 Subordinated Debt Securities Claim.** Any Claim of the type described in and subject to subordination pursuant to § 510(b) of the Bankruptcy Code relating to Equity Interests or Equity Related Claims.

**1.101 Subordination Agreement.** That certain second amended and restated subordinated agreement executed by Ira A. Fulton and dated February 4, 2003, as amended from time to time, which provides that Ira A. Fulton agrees to subordinate repayment of the Fulton Unsecured Claim to the Claims of the Bank Group arising under the Pre-Petition Loan Agreement.

**1.102** ~~1.101~~ **Tax Reorganization.** A tax-free reorganization under Internal Revenue Code Section 368(a)(1)(D) or (G).

**1.103** ~~1.102~~ **Tax Reorganization Plan.** A tax reorganization plan between Fulton Sales and the Debtor effectuating the Tax Reorganization regarding the Fulton Sales Stock Contribution and the Q-Sub Election.

**1.104** ~~1.103~~ **Trust Contribution.** The contribution by Ira and Mary Lou Fulton of all of the outstanding equity interests in Fulton Sales to the Fulton Family Trust. The Trust Contribution will occur on or before the Effective Date in the manner set forth in Article VI of this Plan.

**1.105** ~~1.104~~ **Unimpaired.** Any Claim or Equity Interest that is not Impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.106 Unit.** Any Bank Group Collateral consisting of single family residential housing units.

**1.107** ~~1.105~~ **Unsecured Deficiency Claim**. Any Claim by a Person holding a Secured Claim to the extent the value of such Creditor's Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, is less than the Allowed amount of such Creditor's Claims as of the Petition Date, after taking into account any elections made pursuant to Section 1111(b) of the Bankruptcy Code.

**1.108** ~~1.106~~ **Unsecured Warranty Claim.** Any Claim by a Person against the Debtor: (a) arising from the provision of a two-year seller's warranty to the purchaser of homes constructed and sold by the Debtor before the Effective; and (b) for which the Debtor is determined to be actually liable to such Person under contract, tort, equity, or other applicable law as determined by a court of competent jurisdiction.

**1.109** ~~1.107~~ **Voting Deadline**. The date established by the Bankruptcy Court by which holders of Allowed Claims and Interests are determined for purposes of such holders' right to submit Ballots.

**C.     Rules of Interpretation.**

For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and neuter; (c) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;

(d) any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to this Plan; (e) any reference to an entity as a holder of a Claim or Equity Interest includes that entity's successors and assigns; (f) all references in this Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to this Plan; (g) the words "herein," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (h) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (i) subject to the provisions of any contract, certificates of incorporation, by-laws, instrument, release or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; and (j) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply.

**D.      Computation of Time.**

In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.  If a date on which a transaction may occur pursuant to the Plan or the Amended Operating Agreement shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

**E.      Reference to Monetary Figures.**

All references in this Plan to monetary figures shall refer to United States of America currency, unless otherwise expressly provided.

**F.      Exhibits.**

All Exhibits and the Plan Supplement are incorporated into and are a part of this Plan as if set forth in full herein and, to the extent not annexed hereto, such Exhibits and Plan Supplement shall be filed with the Bankruptcy Court on or before the Plan Supplement Filing Date.  After the Plan Supplement Filing Date, copies of Exhibits can be obtained by: (a) written request to Squire, Sanders & Dempsey L.L.P., Two Renaissance Square, 1 East Washington, Suite 2700, Phoenix, Arizona 85004-2256 (***Attn:  Bradley A. Cosman, Esq., bcosman@ssd.com***), counsel to the Debtor; or (b) accessing the website for the United States Bankruptcy Court for the District of Arizona (www.azb.uscourts.gov/).  To the extent any Exhibits and the Plan Supplement are inconsistent with the terms of this Plan, unless otherwise ordered by the Bankruptcy Court, the non-Exhibit portion of this Plan shall control.

**ARTICLE II**
**TREATMENT OF UNCLASSIFIED CLAIMS**

**2.1      Unclassified Claims.**

As provided in Bankruptcy Code § 1123(a)(1), Administrative Claims, Priority Tax Claims and Other Priority Claims are not classified for purposes of voting on, or receiving distributions under, this Plan. Holders of Administrative Claims and Priority Tax Claims are not entitled to vote on this Plan but, rather, are treated separately in accordance with Article II of this Plan and under Bankruptcy Code § 1129(a)(9)(A).

**2.2      Allowed Administrative Claims.**

**A.   Generally.**  Each Allowed Administrative Claim (other than a Preserved Ordinary Course Administrative Claim or Professional Claim) shall be paid in full in Cash (or otherwise satisfied in accordance with its terms) on the latest of: (a) the Effective Date, or as soon after that date as practicable; (b)

any date the Bankruptcy Court may fix, or as soon after that date as practicable; (c) 30 days after the Claim is Allowed; and (d) any date on which the holder of the Claim and the Reorganized Debtor agrees.

**B. Requests for Payment.** All requests for payment of an Administrative Claim (other than a Preserved Ordinary Course Administrative Claim or Professional Claim) must be served on the Reorganized Debtor and filed with the Bankruptcy Court no later than the Administrative Claims Bar Date. Any holder of an Administrative Claim (other than a Preserved Ordinary Course Administrative Claim or Professional Claim) that fails to file and serve its request by the Administrative Claims Bar Date shall be forever barred from asserting its Administrative Claim against the Debtor or the Reorganized Debtor.

**2.3    Preserved Ordinary Course Administrative Claims.**

Each Allowed Preserved Ordinary Course Administrative Claim shall be paid in full in Cash at the Reorganized Debtor's election either: (a) in accordance with the terms and conditions under which the Claim arose; or (b) on such date on which the holder of the Claim and the Reorganized Debtor agrees. Payments shall be made without further action by the holder of the Preserved Ordinary Course Administrative Claim.

**2.4    Allowed Priority Tax Claims.**

Any Allowed Priority Tax Claim shall be paid in full in Cash on the later of the Effective Date (or as soon after that date as practicable) and 30 days after the Claim is Allowed, but the Debtor or the Reorganized Debtor may elect to pay any Allowed Priority Tax Claim through regular installment payments in Cash of a total value, as of the Effective Date, equal to the Allowed amount of the Claim, over a period ending not later than five years after the Petition Date, and in a manner not less favorable than the most favored General Unsecured Claim provided for by this Plan. If the Debtor or the Reorganized Debtor so elects, the installment payments shall be made in equal quarterly installments of principal plus simple interest on the unpaid portion of the Allowed Priority Tax Claim accruing from the Effective Date at the rate of six percent per year. The first payment shall be made on the latest of: (a) the Effective Date, or as soon after that date as practicable; (b) 30 days after the Claim is Allowed, or as soon after than date as practicable; and (c) another date on which the holder of the Claim and the Debtor or the Reorganized Debtor agrees. The Reorganized Debtor retains the right to prepay any Allowed Priority Tax Claim, or any remaining balance of such a Claim, in full or in part, at any time on or after the Effective Date without premium or penalty.

**2.5    Allowed Other Priority Claims.**

Any Allowed Other Priority Claim shall be paid in full in Cash either: (a) on the later of the Effective Date (or as soon after that date as practicable) and 30 days after the Claim is Allowed; or (c) on such date on which the holder of the Allowed Other Priority Claim and the Reorganized Debtor agrees.

**2.6    Professional Claims.**

Each Allowed Professional Claim shall be paid in full in Cash: (a) no later than three days after the Professional Claim is Allowed; (b) on any other terms the holder of an Allowed Professional Claim and the Debtor or the Reorganized Debtor may agree; or (c) in accordance with the terms of any applicable administrative procedures order entered by the Bankruptcy Court. Each Person seeking an award by the Bankruptcy Court of Professional Fees must file with the Bankruptcy Court and serve on the Reorganized Debtor its final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date within 60 days after the Effective Date.

### ARTICLE III
### CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims against and Equity Interests in the Debtor. All Claims and Equity Interests, except Administrative

Claims, Priority Tax Claims, Other Priority Claims and any other unclassified Claims are placed in the Classes as set forth below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, and Other Priority Claims have not been classified, and the respective treatments of such unclassified Claims are set forth in Article II of this Plan.

A Claim or Equity Interest is placed in a particular Class only to the extent that the Claim or Equity Interest falls within the description of that Class and is classified in another Class or Classes to the extent that any portion of the Claim or Equity Interest falls within the description of such other Classes. A Claim is also placed in a particular Class for the purpose of receiving Distributions pursuant to this Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date. The value of any Distributions received by Holders of Claims in satisfaction of interest-bearing obligations shall be allocated first to the full satisfaction of the principal of such interest-bearing obligations and second in satisfaction of any accrued and unpaid interest, except as otherwise provided in the Amended and Restated Credit Agreement.

## 3.1 Secured Claims.

Secured Claims shall be classified in the following Classes:

**A.** **Class 1:** Class 1 shall consist of all Allowed Secured Vendor Claims. Each holder of an Allowed Secured Vendor Claim is considered to be in its own separate subclass within Class 1, and each such subclass is deemed to be a separate Class for purposes of the Plan.

**B.** **Class 2:** Class 2 shall consist of all Allowed Secured Tax Claims. Each holder of an Allowed Secured Tax Claim is considered to be in its own separate subclass within Class 2, and each such subclass is deemed to be a separate Class for purposes of the Plan.

## 3.2 Unsecured Claims.

Unsecured Claims shall be classified in the following Classes:

**A.** **Class 3:** Class 3 shall consist of all Allowed Bank Group Claims.

**B.** **Class 4:** Class 4 shall consist of all Allowed General Unsecured Claims.

**C.** **Class 5:** Class 5 shall consist of all Allowed Queen Creek Claims.

**D.** **Class 6:** Class 6 shall consist of all Allowed Unsecured Warranty Claims.

**E.** **Class 7:** Class 7 shall consist of all Allowed Fulton Unsecured Claims.

## 3.3 Equity Interests.

Equity Interests shall be classified in the following Classes:

**A.** **Class 8:** Class 8 shall consist of all Allowed Equity Interests

**ARTICLE IV**
**TREATMENT OF CLAIMS AND INTERESTS**

The treatment of Claims and Equity Interests as provided in this Article IV represents a compromise and full and final settlement, pursuant to Section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, of the various Claims and Equity Interests of parties in interest in the Chapter 11 Case.

**4.1    Class 1 – Secured Vendor Claims.**

   **A.  Impairment and Voting.**  Class 1 is Impaired by this Plan.  All holders of Allowed Secured Vendor Claims in Class 1 are entitled to vote and shall be solicited to vote on this Plan.

   **B.  Treatment.**  Each holder of an Allowed Secured Vendor Claim is considered to be in its own separate subclass within Class 1, and each such subclass is deemed to be a separate Class for purposes of the Plan.  The treatment accorded to Allowed Secured Vendor Claims under this Plan depends on whether the holder of such Claim votes to accept or reject this Plan.

   1.    Treatment Upon Acceptance of Plan:  Each holder of an Allowed Secured Vendor Claim that votes to accept the Plan shall receive, in full and final satisfaction, settlement, release, and discharge of, such Claim, the following treatment: a) a Cash payment on the Effective Date equal to 60% of the Allowed amount of such Secured Vendor Claim; b) Cash payments in an amount equal to the balance of the Allowed Secured Vendor Claim, with such payments to be made over a 2-year period commencing on the Effective Date, and shall be paid interest at a market rate as determined by the Bankruptcy Court; and c) The holder of such Allowed Secured Vendor Claim shall be designated a "Preferred Vendor" entitling such claimholder to bid on all future jobs of the Reorganized Debtor so long as the unsecured note remains unpaid.

   In consideration for the foregoing treatment, and in full and final settlement of any and all claims between the Claim holder and the Debtor, as of the Effective Date the holder of an Allowed Secured Vendor Claim that votes to accept the Plan will: (i) agree to extend normal pre-petition trade and payment terms to the Reorganized Debtor; and (ii) subordinate any and all Liens, security interests and right to receive any Cash held in escrow to the Liens and payments provided to the Bank Group to facilitate the Debtor's treatment of the Bank Group Claims.

   2.    Treatment Upon Rejection of Plan:  Each holder of an Allowed Secured Vendor Claim that votes to reject the Plan shall receive, in full and final satisfaction, settlement, release, and discharge of, such Claim, the following treatment: a) a Cash payment on the Effective Date equal to 60% of the Allowed amount of such Secured Vendor Claim; b) Cash payments in an amount equal to the balance of the Allowed Secured Vendor Claim, with such payments to be made over a 24-year period commencing on the Effective Date, and shall be paid interest at a market rate as determined by the Bankruptcy Court; and c) The holder of such Allowed Secured Vendor Claim shall not be designated as a "Preferred Vendor."

   In consideration for the foregoing treatment, and in full and final settlement of any and all claims between the Claim holder and the Debtor, as of the Effective Date the holder of an Allowed Secured Vendor Claim that votes to accept the Plan will: (i) agree to extend normal pre-petition trade and payment terms to the Reorganized Debtor; and (ii) subordinate any and all Liens, security interests and right to receive any Cash held in escrow to the Liens and payments provided to the Bank Group to facilitate the Debtor's treatment of the Bank Group Claims.

**4.2    Class 2 – Secured Tax Claims.**

**A.  Impairment and Voting.**  Class 2 is Impaired by this Plan.  All holders of Allowed Secured Tax Claims in Class 2 are entitled to vote and shall be solicited to vote on this Plan.

**B.  Treatment.**  Each holder of an Allowed Secured Tax Claim is considered to be in its own separate subclass within Class 2, and each such subclass is deemed to be a separate Class for purposes of the Plan.  The treatment of Allowed Secured Tax Claims will depend upon the nature of the property subject to the Lien of the holder of the Allowed Secured Tax Claim.

1.    Finished Lots:  Each holder of an Allowed Secured Tax Claim that are secured by a Lien on finished lots of the Debtor shall receive, in full and final satisfaction, settlement, release, and discharge of, such Claim, the following treatment: a) the Claim holder will retain its Lien on the property until such time as the Claim is paid in full; and b) the Claim will be paid in full and in Cash, with interest at the statutory rate, on the date that the respective developed lot is sold to a third party.

2.    Unfinished Lots:  Each holder of an Allowed Secured Tax Claim that are secured by a Lien on unfinished lots of the Debtor shall receive, in full and final satisfaction, settlement, release, and discharge of, such Claim, the following treatment: a) the Claim holder will retain its Lien on the property until such time as the Claim is paid in full; and b) the Claim will be paid in full and in Cash, with interest at the statutory rate, over a 4-year period following the Effective Date.  The Reorganized Debtor will make semi-annual payments on account of such Allowed Secured Tax Claims.

**4.3    Class 3 – Bank Group Claims.**

**A.  Impairment and Voting.**  Class 3 is Impaired by this Plan.  All holders of Allowed Bank Group Claims in Class 3 are entitled to vote and shall be solicited to vote on this Plan.

**B.  Treatment.**  In full settlement, release and discharge of all Bank Group Claims, on the Effective Date or as soon thereafter as practicable, Holders of Allowed Bank Group Claims shall receive the following:

1.    Cash Payment:  On the Effective Date, the Borrowers will pay the Bank Group Effective Date Cash Payment to the holders of Allowed Bank Group Claims.

2.    New Note:  On the Effective Date, the Borrowers will issue the New Note to the holders of Allowed Bank Group Claims, and shall execute the Amended and Restated Credit Agreement.

3.    Collateral:  On the Effective Date, the Borrowers will grant to the holders of Allowed Bank Group Claims senior, perfected and valid Liens on the Bank Group Collateral (subject only to existing Liens securing Allowed Secured Tax Claims), provided, however, that the Liens granted hereunder shall be released by the holders of Allowed Bank Group Claims upon the ~~payment to the Administrative Agent on behalf of the holders of Allowed Bank Group Claims of the Lot Release Price by the Borrowers~~satisfaction of the conditions set forth in Section 3.2 of the Amended and Restated Credit Agreement.

4.    Interest and Term:  The New Note matures on the sixth anniversary of the Effective Date.  The New Note shall bear interest at LIBOR + 4.00%, subject to a LIBOR floor of 2.00%, provided, however, that if the outstanding principal amount of the New Note on the third anniversary of the Effective Date is equal to or less than $75 million, the interest rate will be reduced to LIBOR + 2.00%, subject to a LIBOR floor of 2.00%.

5.    Minimum Amortization:  The Borrowers will make minimum annual principal payments  on the New Note in the amount of $15 million, which will be due and payable on each anniversary of the Effective Date; provided, however, that on or prior to the third anniversary of the Effective Date, the Borrowers will be required to have made principal payments equal to or greater than $55 million.

6.    ~~Use of Cash Proceeds~~Mandatory Prepayments:  From and after the Effective Date, ~~Net Cash Proceeds from Home Sales will be deposited into a controlled operating account and will be disbursed upon the closing of such Home Sale: (i) first, to the holders of Allowed Bank Group Claims~~the Borrowers shall make mandatory prepayments pursuant to the Amended and Restated Credit Agreement as follows: (i) in connection with the sale of Bank Group Collateral consisting of a Unit, the Borrowers shall prepay the obligations arising under the Amended and Restated Credit Agreement in an aggregate amount equal to 21% of the ~~Lot Release Price; (ii~~Gross Sales Price from the sale of such Unit; and (ii) in connection with the sale of Bank Group Collateral consisting of a Non-Unit, the Borrowers shall apply the Net Cash Proceeds from such sale as follows: (a) first, to fund the Maximum Working Capital Reserve; (b) second, to fund the Maximum ~~Working Capital Reserve; (iii) third, to fund the Maximum Lot Reserve; and (iv) fourth, to the Borrowers, subject to any Liens in Cash and bank accounts granted to the holders of Allowed Bank Group Claims~~Lot Reserve; and (c) third, all remaining Net Cash Proceeds shall be used to prepay the obligations arising under the Amended and Restated Credit Agreement.

## 4.4    Class 4 – General Unsecured Claims.

**A.  Impairment and Voting.**  Class 4 is Impaired by this Plan.  All holders of Allowed General Unsecured Claims in Class 4 are entitled to vote and shall be solicited to vote on this Plan.

**B.  Treatment.**  Holders of Allowed General Unsecured Claims (other than Bank Group Claims, the Queen Creek Claim, and the Fulton Unsecured Claim) will receive, in full and final satisfaction of such claims: a) a Cash payment on the Effective Date equal to 60% of the Allowed amount of such General Unsecured Claim; and b) Cash payments in an amount equal to the balance of the Allowed amount of such Claim (including post-petition interest at the Federal Judgment Rate).  Such payments shall be made over a 3-year period commencing on the earlier of the Effective Date or the date such claim becomes allowed, and shall be paid interest at a market rate as determined by the Bankruptcy Court.

## 4.5    Class 5 – Queen Creek Claims.

**A.  Impairment and Voting.**  Class 5 is Impaired by this Plan.  All holders of Allowed Queen Creek Claims in Class 5 are entitled to vote and shall be solicited to vote on this Plan.

**B.  Treatment.**  Holders of Allowed Queen Creek Claims will receive, in full and final satisfaction of such claims, reduced Cash payments in the following amounts: (a) $125,000 in Cash on the Effective Date; (b) $75,000 in Cash on the first anniversary of the Effective Date; and (c) $50,000 in Cash on the second anniversary of the Effective Date.

**4.6    Class 6 - Unsecured Warranty Claims.**

    **A.  Impairment and Voting.**  Class 6 is Unimpaired by this Plan.  All holders of Allowed Equity Interests in Class 6 are deemed to have accepted this Plan and shall not be entitled to vote on this Plan.

    **B.  Treatment.**  Holders of Allowed Unsecured Warranty Claims will have their Claims paid in full in the ordinary course of business of the Debtor or Reorganized Debtor, as applicable, as and when such Claims become Allowed.

**4.7    Class 7 - Fulton Unsecured Claim.**

    **A.  Impairment and Voting.**  Class 7 is Impaired by this Plan.  All holders of Allowed Fulton Unsecured Claims in Class 7 are entitled to vote and shall be solicited to vote on this Plan.

    **B.  Treatment.**  Ira A. Fulton, who is the sole holder of the Fulton Unsecured Claim, shall, in full and final satisfaction of the Fulton Unsecured Claim, and to facilitate the treatment of all Claims against the Debtor and reorganization of the Debtor, shall on the Effective Date for purposes of this Plan only, convert the $25 million Fulton Unsecured Claim into additional equity of the Reorganized Debtor, provided, however, that if the Bankruptcy Court determines that the conversion of the Fulton Unsecured Claim into equity of the Reorganized Debtor constitutes a payment of principal and interest on the Fulton Unsecured Claim, then the Fulton Unsecured Claim shall not be converted into equity of the Reorganized Debtor, and there shall be no payments made on account of the Fulton Unsecured Claim so long as any obligations under the Amended and Restated Credit Agreement remain outstanding.

        Notwithstanding the foregoing, nothing in the Plan or Confirmation Order, including Article 10.4 of the Plan, shall alter or impair the Subordination Agreement.

**4.8    Class 8 – Equity Interests.**

    **A.  Impairment and Voting.**  Class 8 is Impaired by this Plan.  All holders of Allowed Equity Interests in Class 8 are entitled to vote and shall be solicited to vote on this Plan.

    **B.  Treatment.**  The Plan shall not alter or otherwise impair Allowed Equity Interests.  The Reorganized Debtor will not make distributions to holders of Allowed Equity Interests until the Borrowers' obligations under the New Loan Documents are first satisfied in full, provided, however, that the Reorganized Debtor will be permitted to make normal and customary distributions to holders of Allowed Equity Interests for the purpose of permitting such holders to pay taxes so long as an event of default has not occurred under the Amended and Restated Credit Agreement.

    Additionally, to facilitate the transactions and treatment of Claims set forth in this Plan, on the Effective Date the holders of Allowed Equity Interests will, as described in Article 6.1 of this Plan: (a) contribute the equity interests in Fulton Sales to the Reorganized Debtor; (b) make Fulton Sales become a Borrower under the Amended and Restated Credit Agreement; and (c) make Fulton Sales pledge its Cash to the holders of Allowed Bank Group Claims as part of the Bank Group Collateral.


**ARTICLE V**
**ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE IMPAIRED CLASSES OF CLAIMS OR EQUITY INTERESTS**

**5.1    Impaired Classes of Claims Entitled to Vote.**

Except as otherwise provided in any Final Order(s) of the Bankruptcy Court pertaining to solicitation of votes on this Plan and Sections 5.3 and 5.5 of this Plan, holders of Claims in each Impaired Class are entitled to vote in their respective classes as a class to accept or reject this Plan.

**5.2    Classes Deemed to Accept the Plan.**

Class 6 is Unimpaired by this Plan. Pursuant to Section 1126(f) of the Bankruptcy Code, such Class is conclusively presumed to have accepted this Plan, and the votes of holders of Equity Interests in Class 6 therefore shall not be solicited.

**5.3    Acceptance By Impaired Classes.**

Classes 1, 2, 3, 4, 5, 7 and 8 are Impaired under this Plan. Pursuant to Section 1126(c) of the Bankruptcy Code, and except as provided in Section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims has accepted the Plan if the Plan is accepted by the holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

**5.4    Classes Deemed to Reject the Plan.**

Pursuant to Section 1126(g) of the Bankruptcy Code, no Classes of Claims or Equity Interests are conclusively presumed to have rejected this Plan.

**5.5    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.**

If any Impaired Class of Claims entitled to vote should not accept this Plan by the requisite statutory majorities provided in Section 1126(c) of the Bankruptcy Code, the Debtor reserves the right to request that the Bankruptcy Court confirm this Plan under Section 1129(b) of the Bankruptcy Code.

**ARTICLE VI**
**IMPLEMENTATION OF THE PLAN**

**6.1    Sources of Consideration for Plan Distributions.**

The Reorganized Debtor shall fund Distributions under the Plan with Cash on hand, the sale of existing assets in the ordinary course of business, the New Credit Facility, the agreement of Fulton Sales to become a Borrower under the New Credit Facility, the conversion of the Fulton Unsecured Claim into equity in the Reorganized Debtor, and the creation of new Liens and security interests in assets of the Reorganized Debtor and Fulton Sales to secure the obligations of the Borrowers under the New Credit Facility. In addition, the holders of the outstanding equity of Fulton Sales will effectuate the Trust Contribution pursuant to the Tax Reorganization Plan.

**A.    New Credit Facility.**  On the Effective Date, the Borrowers will execute the New Loan Documents. Pursuant to the New Loan Documents, the Borrowers will issue the New Note to the holders of Allowed Bank Group Claims on the Effective Date. The New Note shall be a term note in the face amount of the New Note Face Amount. The New Note matures on the sixth anniversary of the Effective Date. The New Note shall bear interest at LIBOR + 4.00%, subject to a LIBOR floor of 2.00%, provided, however, that if the outstanding principal amount of the New Note on the third anniversary of the Effective Date is equal to or less than $75 million, the interest rate will be reduced to LIBOR + 2.00%, subject to a LIBOR floor of 2.00.

**B.    Contribution of Fulton Sales Equity Interests.**  On or before the Effective Date, iIra and Mary Lou Fulton will make the Trust Contribution to the Fulton Family Trust. Subsequently, the Fulton Family Trust will make the Fulton Sales Stock Contribution to the Debtor. The timing and implementation

of the making of the Trust Contribution and the Fulton Sales Stock Contribution will occur in the manner and order specified in Article 6.10 of this Plan.

**C. Fulton Sales Becomes Borrower Under New Credit Facility.** On the Effective Date, in full and final settlement and satisfaction of the treatment of Claims and releases granted under the Plan, Fulton Sales agrees to become a Borrower under the New Credit Facility, and will, in its capacity as Borrower, pledge any unrestricted Cash, including unrestricted Cash generated post-Effective Date from ~~Home~~ Sales of Units and Non-Units as part of the Bank Group Collateral.

**D. Conversion of Fulton Unsecured Claim Into Equity.** On the Effective Date, in full and final settlement and satisfaction of the treatment of the Fulton Unsecured Claim under the Plan, and to facilitate the treatment of Allowed Claims under the Plan and the reorganization of the Debtor, Ira A. Fulton shall, for purposes of this Plan only, agree to convert the $25 million Fulton Unsecured Claim into equity in the Reorganized Debtor.

**E. Bank Group Collateral.** On the Effective Date, in full and final settlement and satisfaction of the treatment of Claims and releases granted under the Plan, the obligations of the Borrowers under the New Credit Facility shall be secured by senior, perfected and valid Liens on the Bank Group Collateral (subject only to existing Liens securing Allowed Secured Tax Claims), provided, however, that the Liens granted hereunder shall be released by the holders of Allowed Bank Group Claims upon the ~~payment to the Administrative Agent on behalf of the holders of Allowed Bank Group Claims of the Lot Release Price by the Borrowers~~satisfaction of the conditions set forth in Section 3.2 of the Amended and Restated Credit Agreement.

## 6.2    Continued Corporate Existence.

**A. The Debtor**. From and after the Effective Date, the Debtor will continue to exist, with all the powers of a corporation under applicable law in the jurisdiction in which each the Debtor is incorporated and pursuant to its articles of incorporation and bylaws in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws are amended by this Plan, without prejudice to any right to terminate such existence (whether by merger or otherwise) under applicable law after the Effective Date.

**B. Amended and Restated Organizational Documents**. As of the Effective Date and without any further action by the stockholders or directors of the Debtor or the Reorganized Debtor, the Reorganized Debtors' certificate of incorporation will be amended and restated substantially in the forms of the Amended and Restated Articles of Organization. The Amended and Restated Organizational Documents will also prohibit (to the extent required by Bankruptcy Code § 1123(a) and (b)) the issuance of non-voting equity securities. After the Effective Date, the Reorganized Debtor may amend the Amended and Restated Organizational Documents as permitted by applicable law.

**C. Non-Debtors**. There are certain Affiliates of the Debtor that are not Debtors in the Chapter 11 Case. The continued existence, operation and ownership of such Non-Debtor Affiliates is a material component of the Debtor's business, and, as set forth in Article 11.1 of this Plan, all of the Debtor's equity interests and other property interests in such Non-Debtor Affiliates shall revest in the Reorganized Debtor or its successor on the Effective Date.

## 6.3    Cancellation of Securities, Instruments and Agreements.

On the Effective Date, except to the extent provided otherwise in this Plan, all securities, and all agreements, instruments, and other documents evidencing or governing any Claims against the Debtor, will be automatically deemed terminated, canceled, and extinguished with respect to the Debtor and the Chapter 11 Case (all without further action by any Person), and all obligations of the Debtor and its Estate under

such instruments and agreements will be deemed fully and finally waived, released, canceled, extinguished, and discharged.

**6.5    Effectiveness of New Securities, Instruments, Agreements and Documents.**

On the Effective Date, all securities, instruments, agreements, and documents issued, entered into, delivered, or filed under this Plan, including, without limitation, the New Note, the Amended and Restated Credit Agreement, the Plan Documents, and any security, instrument, agreement or document entered into, delivered, or filed in connection with any of the foregoing, will be deemed to become effective, binding, and enforceable in accordance with its respective terms and conditions.

**6.6    No Corporate Action Required.**

As of the Effective Date: (a) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements related to or contemplated by this Plan; and (b) the other matters provided for under, or in furtherance of, this Plan involving corporate action required of the Debtor, will be deemed to have occurred and become effective as provided in this Plan, and will be deemed authorized and approved in all respects without further order of the Bankruptcy Court or any further action by the stockholders or directors of the Debtor.

**6.7    Officers and Directors.**

**A.    Board of Directors.**  The board of directors of the Reorganized Debtor as of the Effective Date shall consist of Ira and Mary Lou Fulton.  Ira A. Fulton will serve as Chairman of the board of directors of the Reorganized Debtor.  The qualifications and compensation of Mr. and Mrs. Fulton is described in the Disclosure Statement.

**B.    Officers.**  The officers of the Reorganized Debtor as of the Effective Date shall consist of Douglas S. Fulton, who shall serve as Chief Executive Officer and Executive Vice President, Norman Lee Nicholls, who shall serve as President and Chief Operating Officer, and Steve W. Walters, who shall serve as Chief Financial Officer and Treasurer.  The qualifications and compensation of these officers is described in the Disclosure Statement.

**C.    Indemnification and Insurance.**  The Reorganized Debtor will assume any pre-Petition Date indemnification obligations to any current or former directors and officers employed with the Debtor as of the Effective Date.

**6.8    Operations Pending Effective Date.**

Until the Effective Date, the Debtor will continue to operate its business, subject to all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules.

**6.9    Exemption from Transfer Taxes.**

In accordance with Bankruptcy Code § 1146: (a) the issuance, distribution, transfer and exchange of the New Note; (b) the execution and filing of any deed of trust, security agreement or other document or instrument necessary to create, attach, perfect or record any Lien, mortgage, deed of trust or security interest granted under this Plan; (c) the issuance, distribution, transfer, and exchange of assets or property of the Reorganized Debtor, including, without limitation, all real property owned by the Debtor; (d) the execution, assignment, modification, or recording of any lease or sublease; and (e) the execution, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, the Confirmation Order, or any transaction contemplated above, or any transactions arising out of, contemplated by, or in any way related to, the foregoing are not subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, or real estate transfer tax, or other

similar tax or governmental assessment and the appropriate state or local government officials or agents are directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

**6.10    Tax Considerations.**

        **A.    Timing and Order of Transactions.**  In order to implement the Tax Reorganization, the following actions will be deemed to occur on or before the Effective Date in the following order: (a) <u>first</u>, Ira and Mary Lou Fulton will make the Trust Contribution to the Fulton Family Trust; (b) <u>second</u>, Fulton Sales will pay the Fulton Sales Reimbursement Payment to the Debtor; (c) <u>third</u>, the Fulton Family Trust will make the Fulton Sales Stock Contribution to the Debtor; and (d) <u>fourth</u>, the Debtor or Reorganized Debtor, as applicable, will make the Q-Sub Election with respect to Fulton Sales.

        **B.    Tax Reorganization Documents.**  In order to implement the Tax Reorganization, the Debtor, the Reorganized Debtor, Fulton Sales, and their respective directors and shareholders, are authorized and directed to execute the following documents: (a) the Tax Reorganization Plan; (b) those director and/or shareholder consents necessary to effectuate the Tax Reorganization, Trust Contribution, Fulton Sales Stock Contribution and the Q-Sub Election; and (c) those instruments, agreements, documents and certificates as may be necessary to effectuate the Tax Reorganization, including, without limitation, unanimous consents of necessary shareholders and directors and IRS Form 8869, Qualified Subchapter S Election.

**6.11    Payment of Trustee Fees.**
        The Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) within ten (10) days of the entry of the order of confirmation for pre-confirmation periods and simultaneously provide to the United States Trustee an appropriate affidavit indicating the case disbursements for the relevant period.  The Reorganized Debtor shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) based upon all disbursements of the Reorganized Debtor for post-confirmation periods within the time periods set forth in 28 U.S.C. § 1930(a)(6), until the earlier of the closing of these cases by the issuance of a Final Decree by the Court, or upon the entry of an Order by this Court dismissing this case or converting this case to another chapter under the Bankruptcy Code, and the parties responsible for paying the post-confirmation United States Trustee fees shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating all the cash disbursements for the relevant period.

**ARTICLE VII**
**<u>PROVISIONS GOVERNING DISTRIBUTIONS</u>**

**7.1    Distributions on Account of Claims Allowed as of the Effective Date.**
        Except as otherwise provided in the Plan, a Final Order, or as agreed to by the relevant parties, initial Distributions under the Plan on account of Claims Allowed on or before the Effective Date shall be made on the Distribution Date; <u>provided</u>, <u>however</u>, that (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Chapter 11 Case or assumed by the Debtor prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice, and (2) Allowed Priority Tax Claims, unless otherwise agreed, shall be paid in accordance with Article II.B of this Plan.

**7.2    Distribution on Account of Claims Allowed after the Effective Date.**

**A. Payments and Distributions on Disputed Claims.** Except as otherwise provided in the Plan, a Final Order, or as agreed to by the relevant parties, Distributions under the Plan on account of Disputed Claims that become Allowed after the Effective Date shall be made on the Distribution Date that is at least thirty days after the Disputed Claim becomes an Allowed Claim; provided, however, that (a) Disputed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Chapter 11 Case or assumed by the Debtor on or before the Effective Date that become Allowed after the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business or industry practice, and (b) Disputed Priority Tax Claims become Allowed Priority Tax Claims after the Effective Date, unless otherwise agreed, shall be paid in accordance with Article II.4 of this Plan.

**B. Special Rules for Distributions to Holders of Disputed Claims.** Notwithstanding any provision otherwise in the Plan and except as otherwise agreed by the relevant parties: (a) no partial payments and no partial Distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order and (b) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order and all Claims of such Holder have been Allowed. In the event that there are Disputed Claims requiring adjudication and resolution, the Reorganized Debtor shall in its sole discretion establish appropriate reserves for potential payment of such Claims. All Distributions made pursuant to the Plan on account of an Allowed Claim shall be made together with any dividends, payments, or other Distributions made on account of, as well as any obligation arising from, the distributed property as if such Allowed Claim had been an Allowed Claim on the dates Distributions were previously made to Holders of Allowed Claims included in the applicable Class.

**C. Reserve of Funds for Payment of Disputed Claims.** On the Effective Date, after calculating Distributions to Holders of Allowed Claims and potential Distributions to Holders of Disputed Claims under the Plan, the Reorganized Debtor shall retain and set aside in a reserve fund an amount in cash sufficient to make all payments and Distributions which may be subsequently required for payment to Holders of Disputed Claims. As Disputed Claims are Allowed, the Reorganized Debtor shall distribute, in accordance with the terms of the Plan, Cash to Holders of Allowed Claims, and the reserve fund shall be adjusted. The Reorganized Debtor may (but is not required to) request estimation for any Disputed Claim that is contingent or unliquidated.

**D. Limits on Distributions. Notwithstanding anything in the applicable holder's Proof of Claim or otherwise to the contrary, the Holder of a Claim shall not be entitled to receive or recover a Distribution under the Plan on account of a Claim in excess of the amount: (a) stated in the holder's Proof of Claim, if any, as of the Distribution Record Date, plus interest thereon to the extent provided for by the Plan; (b) if the Claim is denominated as contingent or unliquidated as of the Distribution Record Date, the amount that the Debtor elects to reserve on account of such Claim and set forth in the Plan Supplement, or such other amount as may be estimated by the Bankruptcy Court prior to the Confirmation Hearing; or (c) if a Claim has been estimated, the amount reserved to satisfy such Claim after such estimation.**

**7.3    Delivery of Distributions.**

**A. Record Date for Distributions**. On the Distribution Record Date, the Claims Register shall be closed and the Distribution Agent shall instead be authorized and entitled to recognize only those record holders listed on the Claims Register as of the close of business on the Distribution Record Date. Notwithstanding the foregoing, if a Claim or Equity Interest is transferred twenty or fewer days before the

Distribution Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical and in any event only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to transfer by the transferor.

**B. Distribution Agent**.  The Distribution Agent shall make all distributions required under the Plan to the holders of Allowed Claims.

**C. Delivery of Distributions**.  Except as otherwise provided in the Plan, and notwithstanding any authority to the contrary, distributions to Holders of Allowed Claims shall be made to holders of record as of the Distribution Record Date by the Distribution Agent:  (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the signatory set forth on any of the Proofs of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed or if the Debtor has been notified in writing of a change of address); (c) at the addresses set forth in any written notices of address changes delivered to the Distribution Agent after the date of any related Proof of Claim; (d) at the addresses reflected on the Schedules if no Proof of Claim has been Filed and the Distribution Agent has not received a written notice of a change of address; or (e) on any counsel that has appeared in the Chapter 11 Case on the holder's behalf.  Distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of distributions in the manner set forth in the Plan.  The Debtor, the Reorganized Debtor, and the Distribution Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan, except for gross negligence or intentional misconduct.

**D. Compliance Matters**.  In connection with the Plan, to the extent applicable, the Reorganized Debtor and the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all Distributions pursuant to the Plan shall be subject to such tax withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtor and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such tax withholding and reporting requirements, including liquidating a portion of the Distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions pending receipt of information necessary to facilitate such Distributions, or establishing any other mechanisms they believe are reasonable and appropriate to comply with such withholding and reporting requirements.

**F. Fractional, De Minimis, Undeliverable, and Unclaimed Distributions**.

a.      Fractional Distributions.  Notwithstanding any other provision of the Plan to the contrary, payments of fractions of dollars shall not be made and shall be deemed to be zero, and the Reorganized Debtor and the Distribution Agent shall not be required to make distributions or payments of fractions of dollars.  Whenever any payment of Cash of a fraction of a dollar pursuant to the Plan would otherwise be required, the actual payment by the Reorganized Debtor or Distribution Agent shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

b.      De Minimis Distributions.  The Reorganized Debtor and Distribution Agent shall not have any obligation to make a Distribution on account of an Allowed Claim if (1) the amount to be distributed to the Holder of an Allowed Claim on the particular Periodic Distribution Date does not constitute a final Distribution to such Holder and is or has an economic value of less than $50 or (2) the aggregate amount of all Distributions authorized to be made on that Periodic Distribution Date have an economic value less than $20,000, unless such Distribution is a final Distribution.

c.     Undeliverable Distributions.  If any Distribution to a Holder of an Allowed Claim is returned to the Reorganized Debtor or the Distribution Agent as undeliverable, no further Distributions shall be made to such Holder unless and until the Reorganized Debtor or Distribution Agent is notified in writing of such Holder's then-current address, at which time all currently due missed Distributions shall be made to such Holder on the next Periodic Distribution Date. Undeliverable Distributions shall remain in the possession of the Reorganized Debtor until such time as a Distribution becomes deliverable, or such Distribution shall be reallocated to the Holders of other Claims in the same Class on a pro rata basis, (defined as the quotient of each Allowed Claim in such Class and all Allowed Claims in that Class), and shall not be supplemented with any interest, dividends, or other accruals of any kind.

d.     Reversion.  Any Distribution under the Plan that is an Unclaimed Distribution for a period of six months after the Periodic Distribution Date on which such Distribution is initially attempted shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution shall be reallocated to other Holders of Claims in the same Class as the Claim on account of which such Unclaimed Distribution was made, pro rata (defined as the quotient of each Allowed Claim in such Class and all Allowed Claims in that Class).  Upon such reallocation, the Claim of any Holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary.

**H.  Manner of Payment Pursuant to the Plan**.  Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Reorganized Debtor by check or by wire transfer.  Checks issued by the Distribution Agent on account of Allowed Claims shall be null and void if not negotiated within ninety days after issuance, but may be reissued upon written request of the recipient until the Distribution is reallocated to the Holders of other Claims in the same Class.

## 7.4     Claims Paid or Payable by Third Parties.

**A.  Claims Paid by Third Parties**.  The Debtor or Reorganized Debtor, as applicable, shall reduce in full a Claim on the Claims Register, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtor or the Reorganized Debtor.  Further, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not the Debtor or the Reorganized Debtor on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

**B.  Claims Payable by Third Parties**.  No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtor's insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged to the extent of any agreed upon satisfaction on the Claims Register by the Debtor or Reorganized Debtor without a Claims objection having to be Filed and without any further notice, other

than notice to the Holder of such Claim of such expungement, or action, order, or approval of the Bankruptcy Court.

**C. Applicability of Insurance Policies**.  Distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VIII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 8.1 Assumption and Rejection of Executory Contracts and Unexpired Leases.

Except as otherwise provided in the Plan, the Debtor's executory contracts or unexpired leases listed on the schedule of "Rejected Executory Contracts and Unexpired Leases" in the Plan Supplement or not assumed or rejected pursuant to a Bankruptcy Court order prior to the Effective Date shall be deemed rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, except for those executory contracts or unexpired leases:  (1) listed on the schedule of "Assumed Executory Contracts and Unexpired Leases" in the Plan Supplement; (2) that are the subject of a motion to assume or reject pending on the Effective Date (in which case the such assumption or rejection and the effective date thereof shall remain subject to a Bankruptcy Court order); (3) that are subject to a motion to reject with a requested effective date of rejection after the Effective Date; or (4) that are otherwise expressly assumed or rejected pursuant to the Plan.  Entry of the Confirmation Order shall constitute a Final Order approving the assumption or rejection of such executory contracts or unexpired leases as set forth in the Plan, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Unless otherwise indicated, all assumptions or rejections of such executory contracts and unexpired leases in the Plan are effective as of the Effective Date.  Each such executory contract and unexpired lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party prior to the Effective Date shall revest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as such terms may have been modified by such order.  Notwithstanding anything to the contrary in the Plan, the Reorganized Debtor reserves the right to alter, amend, modify, or supplement the schedules of executory contracts or unexpired leases identified in the Plan Supplement at any time through and including fifteen days after the Effective Date.

### 8.2 Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.

**A. Designation of Cure Amount.**  With respect to the Debtor's executory contracts or unexpired leases listed on the schedule of "Assumed Executory Contracts and Unexpired Leases," the Debtor shall have designated a proposed Cure Amount, and the assumption of such executory contract or unexpired lease may be conditioned upon the disposition of all issues with respect to Cure in a manner satisfactory to the Debtor or the Reorganized Debtor.  Any provision or terms of the Debtor's executory contracts or unexpired leases to be assumed pursuant to the Plan that are or may be, alleged to be in default, shall be satisfied solely by Cure, or by an agreed-upon waiver of Cure.

**B. Disagreement with Cure Amount.**  Except with respect to executory contracts and unexpired leases for which the Debtor and the applicable counterparties have stipulated in writing to payment of a Cure Amount, all requests for payment of Cure that differ from the amounts proposed by the Debtor must be Filed with the Court and served on the Debtor on or before the Cure Bar Date.  Any request for a Cure Payment that is not timely Filed shall be disallowed automatically and forever barred from assertion and shall not be enforceable against the Reorganized Debtor, without the need for any objection by the

Reorganized or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim for Cure shall be deemed fully satisfied, released, and discharged upon payment by the Debtor of the amounts listed on the Debtor's proposed Cure schedule, notwithstanding anything included in the Schedules or in any Proof of Claim to the contrary; provided, however, that nothing shall prevent the Reorganized Debtor from paying any Cure Amount despite the failure of the relevant counterparty to File such request for payment of such Cure. The Reorganized Debtor also may settle any Cure without further notice to or action, order, or approval of the Bankruptcy Court.

**C. Resolution of Cure Amount.** If the Reorganized Debtor objects to any requested Cure or any other matter related to assumption, the Bankruptcy Court shall determine the Cure Amount and any related issues. If there is a dispute regarding such Cure Amount, the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then Cure shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Reorganized Debtor and the counterparty to the executory contract or unexpired lease. Any counterparty to an executory contract or unexpired lease that fails to object timely to the proposed assumption of any executory contract or unexpired lease will be deemed to have consented to such assumption. The Reorganized Debtor reserves the right either to reject or nullify the assumption of any executory contract or unexpired lease no later than thirty days after a Final Order determining the Cure Amount or any request for adequate assurance of future performance required to assume such executory contract or unexpired lease or any other matter relating to assumption.

**D. Claims Related to Cure.** Assumption of any executory contract or unexpired lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time prior to the effective date of assumption. Any Proofs of Claim filed with respect to an executory contract or unexpired lease that has been assumed shall be deemed disallowed and expunged, without further notice, other than notice to the other party to such contract or lease of such disallowance and expungement, or action, order, or approval of the Bankruptcy Court.

**8.3    Pre-Existing Obligations to the Debtor under Executory Contracts and Unexpired Leases.**
Rejection of any executory contract or unexpired lease pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtor under such contracts or leases. In particular, notwithstanding any nonbankruptcy law to the contrary, the Reorganized Debtor expressly reserves and does not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtor or the Reorganized Debtor, as applicable, from counterparties to rejected or repudiated executory contracts.

**8.4    Claims Based on Rejection of Executory Contracts and Unexpired Leases.**
Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of the Debtor's executory contracts and unexpired leases pursuant to the Plan or otherwise must be Filed with the Court and served on the Debtor or Reorganized Debtor, as applicable, no later than thirty days after the later of the Effective Date or the date of any notice of rejection. Any Proofs of Claim arising from the rejection of the Debtor's executory contracts or unexpired leases that are not timely Filed shall be disallowed automatically, forever barred from assertion, and shall not be enforceable against the Reorganized Debtor without the need for any objection by the Reorganized Debtor or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the executory contract or unexpired lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. All Allowed Claims arising

from the rejection of the Debtor's executory contracts and unexpired leases shall be classified as Rejection Damages Claims and shall be treated in accordance with Article 4.4 of the Plan.

**8.5    Modification of Executory Contracts and Unexpired Leases Containing Equity Ownership Restrictions.**

All executory contracts and unexpired leases to be assumed under the Plan pursuant to section 365 and 1123 of the Bankruptcy Code shall be deemed so assumed, without giving effect to any provisions contained in such executory contracts or unexpired leases restricting the change in control or ownership interest composition of any or all of the Debtors, and upon the Effective Date (1) any such restrictions shall be deemed of no further force and effect and (2) any breaches that may arise thereunder as a result of Confirmation or Consummation shall be deemed waived by the applicable non-Debtor counterparty.

**8.6    Modifications, Amendments, Supplements, Restatements, or Other Agreements.**

Unless otherwise provided in the Plan, each executory contract or unexpired lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such executory contract or unexpired lease, and all executory contracts and unexpired leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition executory contracts and unexpired leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

**8.7    Reservation of Rights.**

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtor that any such contract or lease is in fact an executory contract or unexpired lease or that the Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired lease at the time of assumption or rejection, the Debtors shall have thirty days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

**8.8    Nonoccurrence of Effective Date.**

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any consensual request to extend the deadline for assuming or rejecting unexpired leases pursuant to sections 365(d)(4) of the Bankruptcy Code.

**ARTICLE IX**
**DETERMINATION OF CLAIMS**

**9.1    Objections to Claims.**

Notwithstanding the occurrence of the Effective Date, and except as to any Claim that has been Allowed before the Effective Date, the Reorganized Debtor may object to the allowance of any Claim against the Debtor or seek estimation of any Claim on any grounds permitted by the Bankruptcy Code.  All objections to Claims filed by the Debtor or Reorganized Debtor must be brought by filing the appropriate pleading in the Bankruptcy Court before the first Business Day that is 180 days after the Effective Date, but the Bankruptcy Court may approve a later date on the Reorganized Debtor's motion filed (but not necessarily heard) before the first Business Day that is 180 days after the Effective Date.

**9.2    Distributions on Allowance or Disallowance of Disputed Claims.**

No distributions shall be made to any holder of a Claim unless and until the Claim becomes an Allowed Claim. If a Claim is not an Allowed Claim as of the Effective Date, distributions on account of that Claim shall commence only when the Claim becomes an Allowed Claim after the Effective Date or as otherwise specifically provided in this Plan. If a Disputed Claim becomes an Allowed Claim, the Reorganized Debtors shall make a distribution in accordance with the terms of this Plan applicable to Claims of the Class in which that Claim resides.

**9.3     Contingent Claims.**

Until a Contingent Claim becomes an Allowed Claim or is Disallowed, the Claim shall be treated as a Disputed Claim for all purposes under this Plan. The holder of a Contingent Claim shall be entitled to a distribution under this Plan only when the Contingent Claim becomes an Allowed Claim. Any Contingent Claim for reimbursement or contribution held by a Person that may be liable with a Debtor on a Claim of a Creditor is Disallowed as of the Effective Date if: (a) that Creditor's Claim is Disallowed; (b) the Claim for reimbursement or contribution is contingent as of the Effective Date; or (c) that Person asserts a right of subrogation to the rights of the Creditor under Bankruptcy Code § 509.


# ARTICLE X
# TITLE TO PROPERTY; VESTING OF ASSETS

**10.1     Vesting of Assets.**

Except as provided in this Plan, the Confirmation Order, or the Plan Documents, all property of the Estate shall vest in the Reorganized Debtor on the Effective Date free and clear of all Liens and Claims of all kinds existing before the Effective Date, provided, however, that all assets of the Reorganized Debtor shall be subject to the senior, perfected Liens granted to the holders of Allowed Bank Group Claims, with such Liens being senior to any and all other Liens, Claims and interests, including any Liens or Claims of creditors asserting mechanics liens or similar operational liens, other than Liens securing Allowed Secured Tax Claims. Real property which vests in the Reorganized Debtor shall remain subject to any easements, rights-of-way, zoning, covenants, conditions and restrictions and other similar land-use restrictions in existence as of the Effective Date. From and after the Effective Date, the Reorganized Debtor may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, including the employment of, and payment to, Professionals except as otherwise provided in this Plan, or the Confirmation Order.

**10.2     Discharge.**

Except as provided in this Plan or the Confirmation Order, the rights granted under this Plan and the treatment of Claims and Equity Interests under this Plan are in exchange for and in complete satisfaction, discharge, and release, of all Claims including any interest accrued on General Unsecured Claims from the Petition Date and termination of all Equity Interests. Except as provided in this Plan or the Confirmation Order, confirmation of this Plan discharges the Debtor and the Reorganized Debtor from all Claims or other debts that arose before the Confirmation Date, and all debts of the kind specified in Bankruptcy Code §§ 502(g), 502(h) or 502(i), whether or not: (i) a proof of claim based on such debt is filed or deemed filed under Bankruptcy Code § 501; (ii) a Claim based on such debt is Allowed under Bankruptcy Code § 502; or (iii) the holder of a Claim based on such debt has accepted this Plan. Without limiting the foregoing, the discharge granted under this Plan is granted to the fullest extent allowed under Bankruptcy Code §§ 1141(a), 1141(b), 1141(c), and 1141(d)(1).

**10.3     Discharge Injunction.**

*Except as provided in this Plan or the Confirmation Order, as of the Confirmation Date, all entities that have held, currently hold, or may hold a Claim or other debt or liability that is unclassified*

*by this Plan or that is classified by this Plan or is subject to a distribution under this Plan, or an Interest or other right of an equity security holder that is treated under this Plan, are permanently enjoined from taking any of the following actions on account of any such Claims, debts, liabilities, or Interests or rights: (a) commencing or continuing in any manner any action or other proceeding against the Debtor and the Reorganized Debtor; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against the Debtor, the Reorganized Debtor, or their respective property; (c) creating, perfecting, or enforcing any Lien or encumbrance against the Debtor, the Reorganized Debtor, or their respective property; (d) asserting a right of setoff, subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtor, the Reorganized Debtor, or their respective property; and (e) commencing or continuing any action, in any manner, in any place, that does not comply with or is inconsistent with the provisions of this Plan or the Bankruptcy Code. Nothing in this Plan is to be construed or is to have the effect of extinguishing, prohibiting, or otherwise limiting, the right of any holder of a Claim to assert a right to setoff or recoupment arising in connection with that Claim as part of the resolution and treatment of that Claim under this Plan.*

**10.4    Releases and Related Matters**

     **A.   Releases by the Debtor.**  Pursuant to Section 1123(b)(3) of the Bankruptcy Code, effective as of the Effective Date, the Debtor, in its individual capacity for and on behalf of its Estate, shall be deemed to forever release, waive, and discharge all Released Parties from all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to (i) the Debtor, (ii) the Chapter 11 Case and the conduct thereof, and (iii) the Plan.  The Reorganized Debtor shall be bound, to the same extent the Debtor is bound, by all of the releases set forth in this Section of the Plan.

     **B.   Injunction.**  *Confirmation of this Plan shall act as an injunction against any Person commencing or continuing against the Reorganized Debtor, including any subsidiary or Affiliate of the Reorganized Debtor that as part of the Plan has agreed to become a Borrower under the New Credit Facility, or any of its assets, any action, employment of process, or act to collect, offset, or recover any Claim or cause of action such Person may possess against the Debtor.*

**10.5    Preservation of Insurance.**
     The discharge and release from Claims as provided in this Plan, except as necessary to be consistent with this Plan, do not diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtor or any other Person.

**ARTICLE XI**
**PRESERVATION OF LITIGATION CLAIMS**

**11.1    Retention and Reservation.**
     In accordance with Bankruptcy Code § 1123(b)(3), all Preserved Litigation Claims are retained and reserved for each of the Reorganized Debtor, which are designated as the Estate's representative under Bankruptcy Code § 1123(b)(3)(B) for purposes of the Preserved Litigation Claims.

**11.2    Prosecution.**
     The Reorganized Debtor shall have the authority to prosecute, defend, compromise, settle, and otherwise deal with any Preserved Litigation Claims, and the Reorganized Debtor shall do so in its capacity as a representative of the Estate in accordance with Bankruptcy Code § 1123(b)(3)(B).  The Reorganized

Debtor shall pay the fees and costs associated with litigating the Preserved Litigation Claims in the ordinary course of business. The Reorganized Debtor shall have sole discretion to determine in its business judgment which Preserved Litigation Claims to pursue, which to settle, and the terms and conditions of those settlements.

## ARTICLE XII
## CONDITIONS PRECEDENT

**12.1    Conditions to Confirmation.**

The following are conditions precedent to confirmation of this Plan that must be satisfied or waived in accordance with Article 12.3 of this Plan:

(a)    The Bankruptcy Court shall have approved by Final Order a Disclosure Statement with respect to this Plan in form and substance acceptable to the Debtor in its sole and absolute discretion.

(b)    The Bankruptcy Court shall have entered the Confirmation Order, which shall be in form and substance acceptable to the Debtor.

(c)    The New Loan Documents shall be in form and substance acceptable to the Debtor.

**12.2    Conditions to the Effective Date.**

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Section 12.3 of this Plan:

(a)    The Bankruptcy Court shall have entered one or more orders (which includes the Confirmation Order) authorizing the assumption and rejection of unexpired leases and executory contracts by the Debtor as contemplated by Article VIII of this Plan.

(b)    The Confirmation Order shall be a Final Order, the Confirmation Date shall have occurred, and no request for revocation of the Confirmation Order under Section 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending.

(c)    Each Exhibit, document or agreement to be executed in connection with this Plan shall be in form and substance reasonably acceptable to the Debtor.

**12.3    Waiver of Conditions.**

The Debtor or the Reorganized Debtor, as applicable, may waive any condition to confirmation or the Effective Date, in whole or in part, at any time, without any notice to parties-in-interest and without further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm or consummate the Plan, underlined provided, underlined however, that the conditions to consummation set forth in Article 12.1(a) and 12.1(b), and the condition to the Effective Date set forth in Article 12.2(a) of this Plan, may not be waived by the Debtor.

**ARTICLE XIII**
**RETENTION OF JURISDICTION**

**13.1    Retention of Jurisdiction.**

Pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Case and this Plan, including, among others, the following matters:

(a)    to hear and determine motions for (i) the assumption or rejection or (ii) the assumption and assignment of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear and determine the allowance of Claims resulting therefrom including the amount of Cure, if any, required to be paid;

(b)    to adjudicate any and all adversary proceedings, applications and contested matters that may be commenced or maintained pursuant to the Chapter 11 Case or this Plan, proceedings to adjudicate the allowance of Disputed Claims and Disputed Interests and all controversies and issues arising from or relating to any of the foregoing;

(c)    to ensure that distributions to Allowed Claimholders are accomplished as provided herein;

(d)    to hear and determine any and all objections to the allowance or estimation of Claims and Equity Interests filed, both before and after the Confirmation Date, including any objections to the classification of any Claim or Interest, and to allow or disallow any Claim or Equity Interest, in whole or in part;

(e)    to enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified and/or vacated;

(f)    to issue orders in aid of execution, implementation, or consummation of this Plan;

(g)    to consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(h)    to hear and determine all applications for allowance of compensation and reimbursement of Professional Claims under this Plan or under Sections 330, 331, 503(b), 1103 and 1l29(a)(4) of the Bankruptcy Code;

(i)    to determine requests for the payment of Claims entitled to priority under Section 507(a)(l) of the Bankruptcy Code, including compensation of and reimbursement of expenses of parties entitled thereto;

(j)    to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of this Plan or the Confirmation Order including disputes arising under agreements, documents or instruments executed in connection with this Plan;

(k)     to hear and determine all suits or adversary proceedings to recover assets of the Debtor and property of the Estate, wherever located;

(l)     to hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

(m)     to hear any other matter not inconsistent with the Bankruptcy Code;

(n)     to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

(o)     to enter a final decree closing the Chapter 11 Case; and

(p)     to enforce all orders previously entered by the Bankruptcy Court.

**ARTICLE XIV**
**MISCELLANEOUS PROVISIONS**

**14.1    Effecting Documents; Further Transactions; Timing**

The Debtor, the Reorganized Debtor, the Administrative Agent, the Bank Group, and all other parties to the Plan Documents are authorized and directed as of the Effective Date, and without further order of the Bankruptcy Court, to execute, deliver, file, or record all Plan Documents and other contracts, instruments, releases, and other agreements or documents, and to take all actions necessary or appropriate to effect and further evidence the terms of this Plan. All transactions required to occur on the Effective Date under the terms of this Plan are deemed to have occurred simultaneously.

**14.2    Binding Effect**

This Plan is binding on, and inures to the benefit of, the Debtor and the holders of all Claims and Interests, including the holders of Equity Related Claims, and their respective successors and assigns.

**14.3    Governing Law**

Except to the extent that the Bankruptcy Code or other federal law is applicable or as provided in any document entered into in connection with this Plan, the rights, duties and obligations of the Debtor and any other Person arising under this Plan are governed by, and construed and enforced in accordance with, the internal laws of the State of Arizona, without giving effect to Arizona's choice of law provisions.

**14.4    Modification of Treatment of Claims**

The Reorganized Debtor reserves the right to modify the treatment of any Allowed Claim in any manner adverse only to the holder of that Claim at any time after the Effective Date on that holder's prior written consent.

**14.5    Setoffs and Recoupment**

The Debtor and the Reorganized Debtor may, but are not required to, set off or recoup against any Claim or Equity Interest and the payments or other distributions to be made under this Plan in respect of such Claim, Claims of any nature that arose before the Petition Date that the Debtor may have against the holder of such Claim or Equity Interest to the extent such Claims may be set off or recouped under applicable law, but neither the failure to do so nor the fact of any Claim or Equity Interest under this Plan becoming Allowed constitutes a waiver or release by the Debtor or the Reorganized Debtor of any such claim that they may have against such holder.

**14.6    Notices**

Any notice required or permitted to be provided under this Plan must be in writing and served by one of the following: (a) certified mail, return receipt requested, postage prepaid; (b) hand delivery; (c) reputable overnight courier service, freight prepaid; (d) e-mail; or (e) fax; addressed as follows:

<blockquote>
To the Debtor:    Attn:    Craig D. Hansen, Esq.<br>
                                  Sean T. Cork, Esq.<br>
                                  Kelly Singer, Esq.<br>
                c/o SQUIRE, SANDERS & DEMPSEY, L.L.P.<br>
                1 East Washington, Suite 2700<br>
                Phoenix, Arizona  85004-2256<br>
                Fax:      602.253.8129<br>
                E-mail:    chansen@ssd.com<br>
                                  scork@ssd.com<br>
                                  ksinger@ssd.com
</blockquote>

|                              |                                                      |
|------------------------------|------------------------------------------------------|
| To the Bank Group:           | Attn:    ~~Christopher H. Bayley~~Donald L. Gaffney, Esq. |
|                              |          Lori A. Lewis, Esq.                          |
|                              | SNELL & WILMER, L.P.                                  |
|                              | One Arizona Center, 400 E. Van Buren                 |
|                              | Phoenix, Arizona 85004-2202                          |
|                              | Fax:      602.382.6070                                |
|                              | E-mail:   cbayley@swlaw.com                           |
|                              |           llewis@swlaw.com                            |
|                              |                                                      |
| To the United States Trustee: | Attn: Larry Watson, Esq.                             |
|                              | OFFICE OF THE UNITED STATES TRUSTEE                  |
|                              | 230 North First Avenue, Suite 204                    |
|                              | Phoenix, Arizona 85003-1706                          |
|                              | E-Mail:   larry.watson@usdoj.gov                     |

**14.7    Delivery of Notices**

If personally delivered, notice is deemed delivered on actual receipt; if faxed or e-mailed in accordance with this Plan, notice is deemed delivered noon of the first Business Day following transmission; if sent by overnight courier in accordance with this Plan, notice is deemed delivered noon of the first Business Day following deposit with such courier; and if sent by U.S. mail in accordance with this Plan, notice is deemed delivered as of the date of delivery indicated on the receipt issued by the relevant postal service; or, if the addressee fails or refuses to accept delivery, as of the date of that failure or refusal. Any party to this Plan may change its address for the purposes of this Plan by giving notice of the change.

**14.8    Severability**

If the Bankruptcy Court finds this Plan or any provision of this Plan to be invalid, illegal or unenforceable, or if the Bankruptcy Court cannot confirm this Plan under Bankruptcy Code § 1129, the Bankruptcy Court, at the request of the Debtor or the Reorganized Debtor, may retain the power to alter and interpret this Plan or any such provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the provision held to be invalid or unenforceable, and such provision shall then become applicable as altered or interpreted. The Confirmation Order constitutes a judicial determination and provides that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable.

**14.9    Plan Documents**

Notwithstanding anything to the contrary contained in this Plan, including any reference in this Plan to documents in the forms annexed to this Plan as exhibits, the Debtor may revise any Plan Document (a) by filing such revised Plan Document with the Bankruptcy Court more than ten days before the deadline for voting on this Plan, or (b) with the written consent of all parties in interest that are entitled to vote on this Plan and are materially and adversely affected by such revision.

**14.10   Inconsistency**

If any inconsistency between this Plan and the Disclosure Statement exists, the provisions of this Plan govern. If any inconsistency between this Plan and any Plan Document exists, the provisions of the Plan Document govern.

**14.11   Subordination**

The distributions under this Plan take into account the relative priority of each Claim in connection with any contractual subordination provisions relating to such Claim. Accordingly, distributions under this Plan are not and may not be subject to levy, garnishment, attachment, or other legal process by any holder of a Claim or Equity Interest purporting to be entitled to the benefits of such contractual subordination, and all such holders are deemed to have waived all contractual subordination rights they otherwise may have had.

**14.12    Withholding and Reporting Requirements**

In connection with this Plan and all instruments issued in connection with this Plan, the Debtor or the Reorganized Debtor, as the case may be, must comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions under this Plan remain subject to any such withholding and reporting requirements. The Debtor and the Reorganized Debtor, as the case may be, may take all actions necessary to comply with such withholding and reporting requirements. Notwithstanding any other provision of this Plan, each holder of an Allowed Claim or Allowed Equity Interest that has received a distribution under this Plan has sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any governmental unit, including income, withholding, and other tax obligation on account of such distribution.

**14.13    Post-Effective Date Fees; Final Decree**

The Reorganized Debtor shall be responsible for paying any post-Effective Date fees under 28 U.S.C. § 1930(a)(6) and filing post-confirmation reports until the Bankruptcy Court enters a final decree, which shall be as soon as practicable after distributions under this Plan have commenced. Notice of application for a final decree need be given only to those holders of Claims and Interests and other parties that, after the Effective Date, specifically request such notice.

**14.14    IRS Circular 230 Notice.**

Any U.S. federal tax descriptions or advice included in this Plan is not intended or written to be used, and cannot be used, to avoid any U.S. federal tax penalties, or to promote, market or recommend to another party any transaction or matter.


Dated:    ~~August 20,~~ September 13, 2010

                                                   **FULTON HOMES CORPORATION.,** Debtor

                                   By:    ___/s/  Norm Nicholls_____
                                           Norm Nicholls
                                           Its:  President

**SQUIRE, SANDERS & DEMPSEY L.L.P.**

By: _____/s/ Craig D. Hansen_____
       Craig D. Hansen
       Sean T. Cork
       Kelly Singer

1 East Washington, Suite 2700
Phoenix, Arizona  85004-2256

~~Proposed~~ Counsel for the Debtor and Debtor-In-Possession

Document comparison by Workshare Professional on Monday, September 13, 2010
1:18:02 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://PHOENIX/552885/5 |
| Description | PHOENIX-#552885-v5-Fulton_Revised_Plan_of_Reorganization |
| Document 2 ID | PowerDocs://PHOENIX/552885/6 |
| Description | PHOENIX-#552885-v6-Fulton_Revised_Plan_of_Reorganization |
| Rendering set | standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 54 |
| Deletions | 60 |
| Moved from | 3 |
| Moved to | 3 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 120 |