Craig D. Hansen, Esq. (AZ Bar No. 007405) chansen@ssd.com
Sean T. Cork, Esq. (AZ Bar No. 022149) scork@ssd.com
Kelly Singer, Esq. (AZ Bar No. 022024) ksinger@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1 East Washington, Suite 2700
Phoenix, Arizona 85004-4498
(602) 528-4000

Counsel to Debtor-In-Possession

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| In re | Case No. 2:09-bk-1298-GBN |
| FULTON HOMES CORPORATION | Chapter 11 |
| Debtor. | **EMERGENCY MOTION FOR AN ORDER UNDER SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE AUTHORIZING DEBTOR TO ENTER INTO TRANSITION SERVICES AGREEMENT WITH FULTON SALES IN AID OF CONFIRMATION AND CONSUMMATION OF DEBTOR'S REORGANIZATION PLAN** |
| | **Proposed Hearing Date:  November 8, 2010**<br>**Proposed Hearing Time:  9:00 AM** |

FULTON HOMES CORPORATION (the "**Debtor**"), debtor-in-possession in the above-captioned chapter 11 case, files this Motion in aid of confirmation of Debtor's reorganization plan seeking an order under Sections 105(a) and 363 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), authorizing the Debtor to enter into, and approving the form of, the "Transition Services Agreement" dated October 22, 2010, attached to this Motion as Exhibit "**A**" (the "**TSA**").

Fulton Homes Sales Corporation ("**Fulton Sales**") is a non-debtor entity with limited operations that is related to the Debtor and was formed to take advantage of certain tax treatment

under Arizona law. After the effective date of *Debtor's Fourth Amended Plan Of Reorganization* dated September 15, 2010 (as may be amended or modified from time to time) (the "**Reorganization Plan**"), the employees of, and certain of the assets owned by, Fulton Sales will be necessary to the reorganized Debtor's and/or its designee's operations. Furthermore, the Debtor will need to utilize the building Fulton Sales owns post-effective date. These employees, assets, and use of the building are necessary to the Reorganization Plan, because Fulton Sales has been eliminated from participating in the Reorganization Plan, and a new entity will undertake the operations of Fulton Sales ("**New Fulton Sales**"). As discussed below, however, recent actions taken by the Bank Group (defined below) have caused Fulton Sales to begin winding down its limited operations and preserve its remaining assets for the benefit of its creditors and other parties in interest. Indeed, Fulton Sales believes that, as a result of the Bank Group's actions, it is prudent to begin the process of winding down its operations. Accordingly, the Debtor and Fulton Sales have negotiated the TSA at this time to begin an orderly wind-down of Fulton Sales' operations and aid confirmation and consummation of the Reorganization Plan.

This Motion is supported by the entire record before the Court and following points and authorities.

**BACKGROUND**

**Jurisdiction and Venue**

1.      On January 27, 2009 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2.      The Debtor continues to operate its business and possess its property in accordance with Bankruptcy Code § 1108.

3.      The Court has jurisdiction over this case under 28 U.S.C. §§ 157 and 1334. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2).

4.     The Debtor has its principal place of Tempe, Arizona.  Accordingly, venue of the Debtor's chapter 11 proceedings is proper in this District under 28 U.S.C. §§ 1408 and 1409.

5.     The statutory predicates for the relief requested in this Motion are Bankruptcy Code §§ 105 and 363.

**Factual Background**

6.     Fulton Sales is a company formed for the sole purpose of taking advantage of certain tax treatments set forth under applicable Arizona law.  Fulton Sales has limited operations.

7.     The Debtor is the borrower under a credit agreement, dated as of February 24, 2003 (as amended, modified, or restated from time to time, the "**Credit Agreement**"), between, among others, the Debtor, Bank of America, N.A., JPMorgan Chase Bank, N.A., Compass Bank, Guaranty Bank and Wells Fargo (collectively, the "**Bank Group**").  Fulton Sales executed a guaranty in favor of the Bank Group in connection with the Credit Agreement (the "**Guaranty**").

8.     On February 10, 2009, the Bank Group filed a complaint against Fulton Sales on account of the Guaranty in the Superior Court of Arizona for Maricopa County (Case No. CV 2009-004101) (the "**State Court Action**").  On April 10, 2009, the Debtor commenced an adversary proceeding against the Bank Group and obtained an injunction that prevents the Bank Group from, among other things, pursuing collection efforts on account of any judgment obtained against Fulton Sales in the State Court Action (the "**Injunction Order**").

9.     On September 15, 2010, the Bank Group obtained a summary judgment order (the "**Summary Judgment Order**") against Fulton Sales on account of the State Court Action, which found Fulton Sales liable under the Guaranty.

10.     The Debtor and Fulton Sales anticipate that this Court will enter an order dissolving the Injunction Order on or around October 28, 2010 (the "**Dissolution Order**"). Notwithstanding prospective entry of the Dissolution Order, the Debtor understands that Fulton Sales intends to contest the Summary Judgment Order and the Bank Group's collection efforts before the State Court or other forum.

11.     As a result of the Summary Judgment Order and/or the prospective Dissolution Order, Fulton Sales may commence a bankruptcy proceeding.

12.     In response to the Summary Judgment Order, the Debtor modified its Reorganization Plan to eliminate Fulton Sales' participation from the Debtor's reorganization, have New Fulton Sales undertake Fulton Sales' operations, and to continue to take advantage of the Arizona tax laws.  As a result of the Summary Judgment Order, Fulton Sales believes, in its business judgment, that it is prudent to commence an orderly wind-down of its limited operations and preserve the value of its cash and other assets for the benefit of its creditors and other parties in interest.

13.     As part of the implementation and consummation of the Reorganization Plan and the orderly wind-down of Fulton Sales' limited operations, Fulton Sales' employees and its assets need to be transferred to the Debtor (or its designee).  Furthermore, because Fulton Sales owns the building in which the Debtor operates, the Debtor and Fulton Sales will execute a lease to continue such use of the building.  In this regard, the Debtor and Fulton Sales executed the TSA.

**Summary of the TSA**[1]

14.     The transactions contemplated under the TSA are to be effective on the earlier of (i) the date this Court approves the TSA, and (ii) the effective date of the Reorganization Plan (such date referred to as the "**Transition Date**").

15.     As set forth in the TSA, on the Transition Date, Fulton Sales will transfer its employees (the "**Employees**") to the Debtor. The Debtor will assume all obligations associated with the Employees' employment (including, but not limited to, salary, compensation, benefits, vacation, etc.). Fulton Sales will have no further obligations to the Employees. The Debtor agrees to make the Employees available to Fulton Sales to wind-down it operations at no charge to Fulton Sales; provided, however, that Fulton Homes shall be allowed to allocate overhead expenses associated with the Employees with respect to the closing of existing residential home contracts as of the date of the TSA in accordance with existing practices.

16.     On the Transition Date, certain personal property owned by Fulton Sales will also be transferred under the TSA. Attached to the TSA is a list of computer hardware, furniture, equipment, and other personal property (collectively, the "**Personal Property**").[2] The Debtor has agreed to purchase the Personal Property from Fulton Sales for $199,820, or such other price as may be determined by the Court.

17.     Fulton Sales owns the building located at 9140 S. Kyrene Road, Tempe, Arizona 85284 (the "**Building**"), which both the Debtor and Fulton Sales utilize in the ordinary course of their businesses. Fulton Sales shall continue to own the Building after the Transition Date, but the parties will enter into a month-to-month lease on or before the Transition Date, that includes

---

[1]     The following reflects a summary of the TSA's salient terms only. Not all terms of the TSA are summarized here. To the extent the TSA and this summary conflict, the terms of the TSA control.

[2]     The Personal Property does not include the Building (defined below) nor the helicopter owned by Fulton Sales.

reasonable and customary terms for similar buildings in the area and a monthly rent payment of $17,832.50.

18.    In the event Fulton Sales commences a bankruptcy proceeding, the parties further agree to work in good faith to obtain approval of the TSA before Fulton Sales' bankruptcy court if necessary.

## RELIEF REQUESTED AND BASIS FOR RELIEF

19.    By this Motion, the Debtor seeks entry of an order, under Bankruptcy Code §§ 105(a) and 363, authorizing the Debtor to enter into, and approving the form of, the TSA.

20.    Bankruptcy Code § 105(a) provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Bankruptcy Code § 363(b) provides, in relevant part, that a debtor-in-possession "after notice and a hearing, may use, sell or lease other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b). Under applicable case law, if a debtor's proposed use of its assets under § 363(b) represents a reasonable business judgment on the part of the debtor, such use should be approved. *See, e.g.*, *In re Walter*, 83 B.R. 14, 17 (B.A.P. 9th Cir. 1987); *In re 240 North Brand Partners, Ltd.*, 200 B.R. 653, 659 (B.A.P. 9th Cir. 1996) (citing *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983)); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 175-76 (D. Del. 1991); *In re Johns Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct").

21.    The transactions contemplated under the TSA are an essential element of the Debtor's Reorganization Plan. The TSA will ensure that the Debtor has the Employees, the

Personal Property, and use of the Building to facilitate and consummate its reorganization that contemplates New Fulton Sales as set forth in the Reorganization Plan. The transactions also facilitate the wind-down of Fulton Sales' limited operations, which Fulton Sales believes, in its business judgment, is prudent in light of the Summary Judgment Order prosecuted by the Bank Group.

22.     The terms of the TSA are reasonable and were negotiated by the parties at arms length with each party represented by separate legal counsel. The Debtor will undertake all of Fulton Sales' obligations to the Employees and further agrees to make such Employees available at no charge to Fulton Sales to facilitate its own wind-down. Under the TSA, the Debtor will also pay fair value for the Personal Property as reflected by the price indicated in the TSA or such other price the Court may determine. Additionally, the lease of the Building between the Debtor and Fulton Sales will be month-to-month and contain reasonable and customary terms for buildings in the area. The monthly rent payment will be at the amount indicated in the TSA.

23.     Under these circumstances, the Debtor submits that the Court may approve the TSA under Bankruptcy Code §§ 105(a) and 363(b). The TSA is necessary to facilitate confirmation and consummation of the Debtor's own Reorganization Plan, and it reflects the Debtor's proper business judgment. The TSA is also necessary to assist Fulton Sales in its own orderly wind-down and preserve its cash and other assets for the benefit of its creditors and other parties in interest.

#

#

#

## CONCLUSION

24.    For the reasons stated above, the Debtor respectfully requests that the Court (a) enter an order under Bankruptcy Code §§ 105(a) and 363 authorizing the Debtor to enter into, and approving the form of, the TSA, and (b) grant such further relief the Court deems appropriate.

Dated this 22nd day of October, 2010.

**SQUIRE, SANDERS & DEMPSEY L.L.P.**

By: */s/ Kelly Singer*
Craig D. Hansen, Esq.
Sean T. Cork, Esq.
Kelly Singer, Esq.
1 East Washington St., Suite 2700
Phoenix, Arizona  85004-4498

Counsel to Debtor-In-Possession

# EXHIBIT A

TRANSITION SERVICES AGREEMENT

**TRANSITION SERVICES AGREEMENT**

         **THIS TRANSITION SERVICES AGREEMENT** (this "**Agreement**") is dated as of October 22, 2010 by and among Fulton Homes Corporation, an Arizona corporation, debtor and debtor-in-possesion ("**Fulton Homes**"), and Fulton Homes Sales Corporation, an Arizona corporation ("**Fulton Sales**").

**W I T N E S S E T H:**

         **WHEREAS**, Fulton Homes is a Chapter 11 debtor-in-possession before the United States Bankruptcy Court for the District of Arizona (Case No. 09-01298-GBN) (the "**Bankruptcy Case**");

         **WHEREAS**, Fulton Homes is wholly owned by the Ira A. and Mary Lou Fulton Trust, the beneficiaries of which are Ira A. Fulton and Mary Lou Fulton, and Fulton Sales is wholly owned by Ira A. Fulton and Mary Lou Fulton;

         **WHEREAS**, Fulton Sales is a company formed for the sole purpose of taking advantage of certain tax treatments set forth under applicable Arizona law;

         **WHEREAS**, Fulton Homes is the borrower under a credit agreement, dated as of February 24, 2003 (as amended, modified, or restated from time to time, the "**Credit Agreement**"), between, among others, Fulton Homes, Bank of America, N.A., JPMorgan Chase Bank, N.A., Compass Bank, Guaranty Bank and Wells Fargo (collectively, the "**Bank Group**");

         **WHEREAS**, Fulton Sales executed a guaranty in favor of the Bank Group in connection with the Credit Agreement (the "**Guaranty**");

         **WHEREAS**, on February 10, 2009, the Bank Group filed a complaint against Fulton Sales on account of the Guaranty in the Superior Court of Arizona for Maricopa County (Case No. CV 2009-004101) (the "**State Court Action**");

         **WHEREAS**, on April 10, 2009, Fulton Homes commenced in its Bankruptcy Case an adversary proceeding against the Bank Group and obtained an injunction that prevents the Bank Group from, among other things, pursuing collection efforts on account of any judgment obtained against Fulton Sales in the State Court Action (the "**Injunction Order**");

         **WHEREAS**, on September 15, 2010, the Bank Group obtained a summary judgment order (the "**Summary Judgment Order**") against Fulton Sales on account of the State Court Action, which found Fulton Sales liable under the Guaranty;

         **WHEREAS**, Fulton Homes and Fulton Sales anticipate that the bankruptcy court in the Bankruptcy Case (the "**Bankruptcy Court**") will enter an order dissolving the Injunction Order on or around October 28, 2010 (the "**Dissolution Order**");

         **WHEREAS**, Fulton Sales intends to contest the Summary Judgment Order and the Bank Group's prospective collection efforts before the State Court or other forum;

WHEREAS, as a result of the Summary Judgment Order and/or the Dissolution Order, Fulton Sales may commence a bankruptcy proceeding;

WHEREAS, in response to the Summary Judgment Order, Fulton Homes modified the *Debtor's Fourth Amended Plan of Reorganization* dated September 15, 2010 filed in its Bankruptcy Case (as may be amended or modified from time to time) (the "**Reorganization Plan**") to eliminate Fulton Sales' participation from Fulton Homes' reorganization, have a new entity undertake Fulton Sales' operations and obtain the tax advantages applicable under Arizona law;

WHEREAS, in aid of the Reorganization Plan's confirmation and consummation, certain assets and operations of Fulton Sales will need to be transferred to Fulton Homes (or its designee);

WHEREAS, as a result of the Summary Judgment Order, Fulton Sales intends to commence an orderly wind-down of its limited operations and to preserve the value of its cash and other assets for the benefit of its creditors and other parties in interest;

WHEREAS, as part of the implementation of the Reorganization Plan and the orderly wind-down of Fulton Sales' limited operations, Fulton Sales will, subject to Bankruptcy Court approval, transfer and sell certain of its assets to Fulton Homes in accordance with the terms of this Agreement, to be effective on the earlier of (i) approval of this Agreement by the Bankruptcy Court in the Bankruptcy Case, and (ii) the effective date of the Reorganization Plan (such earlier time hereinafter referred to as the "**Transition Date**").

NOW, THEREFORE, in consideration of the premises, and subject to the terms and conditions contained in this Agreement, the parties hereto agree as follows:

1. **Employees.**

    (a)    Transfer of Employees to Fulton Homes. On the Transition Date, the Fulton Sales' employees listed on Exhibit "A" attached to this Agreement (collectively, the "**Employees**") shall automatically become employed by Fulton Homes and no longer be employed by Fulton Sales. Fulton Homes shall assume all obligations associated with such Employees' employment (including, but not limited to, salary, compensation, benefits, vacation, etc.), and Fulton Sales shall have no further obligations to the Employees. Except for the identity of their employer, all other terms and conditions of such Employees' employment shall remain unchanged.

    (b)    Continued Services to Fulton Sales. Notwithstanding subparagraph (a) above, Fulton Homes and Fulton Sales agree that Fulton Sales will require the continued services of the Employees to wind-down its operations. Fulton Homes agrees to make its Employees available to Fulton Sales to wind-down the Fulton Sales operations at no charge to Fulton Sales; provided, however, that Fulton Homes shall be allowed to allocate overhead expenses associated with the Employees with respect to the closing of existing residential home contracts as of the date of this Agreement in accordance with existing practices.

2. **Personal Property.**

    (a)    Personal Property Owned by Fulton Sales. Fulton Sales owns certain personal property that comprises computer hardware, furniture, equipment, and other personal

property (collectively, the "**Personal Property**"). A list of the assets comprising the Personal Property is attached to this Agreement as Exhibit "B."

        (b)    <u>Purchase of Personal Property</u>. Fulton Sales agrees to sell and Fulton Homes agrees to purchase the Personal Property for the cash amount of $199,820, or such other value to be determined by the Bankruptcy Court in the Bankruptcy Case, which amount shall be due and payable on the Transition Date. Fulton Homes and Fulton Sales agree that $199,820 represents the mutually agreed upon fair value of the Personal Property.

### 3.    **Lease of Building**

        (a)    <u>Ownership</u>. Fulton Sales owns the building located at 9140 S. Kyrene Road, Tempe, Arizona 85284 (the "**Building**"), which both Fulton Homes and Fulton Sales utilize in the ordinary course of their businesses. Fulton Sales shall continue to own the Building after the Transition Date.

        (b)    <u>Lease of Building to Fulton Homes</u>. On or prior to the first day of the first month immediately following the Transition Date, Fulton Homes and Fulton Sales shall execute and deliver a mutually satisfactory lease agreement (the "**Lease**") for Fulton Homes' continued use of the Building in the same manner currently being utilized. The Lease shall be a month-to-month lease and shall contain reasonable and customary terms for similar buildings in the area, which terms shall include, without limitation, payment of monthly rent in the amount of $17,832.50, and it shall be terminable by either party upon 30-days prior written notice.

### 4.    **Further Assurances; Approval**.

        (a)    Fulton Sales shall execute such documents and other papers and take such further action, at Fulton Homes' expense, as Fulton Homes may reasonably request which are necessary in order to carry out the provisions hereof.

        (b)    Fulton Sales shall not take any action which impairs its ability to carry out the provisions hereof.

        (c)    Fulton Homes and Fulton Sales understand that Fulton Homes will seek approval of this Agreement by the Bankruptcy Court in the Bankruptcy Case. To the extent Fulton Sales commences or has commenced against it a bankruptcy proceeding, Fulton Sales agrees to seek bankruptcy court approval of this Agreement if the parties agree that such approval is reasonably necessary.

        (d)    The parties agree to cooperate in good faith to obtain any such approval that the parties reasonably deem necessary.

        **5.**    **Notices**. All notices and other communications hereunder shall be in writing and shall be deemed to have been duly given upon receipt if (a) mailed by certified or registered mail, return receipt requested, (b) sent by a nationally recognized overnight delivery service (receipt requested), fee prepaid, (c) sent via facsimile with receipt confirmed or (d) delivered personally, addressed as follows or to such other address or addresses of which the respective party shall have notified the other.

      (a)     If to Fulton Homes, to:

            Fulton Homes Corporation.
            9140 S. Kyrene Road, Suite 202
            Tempe, Arizona 85284
            Facsimile:  (480) 753-5554
            Attention:  Steve Walters

            with a copy (which shall not constitute notice) to:

            Squire, Sanders & Dempsey L.L.P.
            One East Washington, Suite 2700
            Phoenix, Arizona 85004-4498
            Facsimile:  (602) 253-8129
            Attention:  Craig D. Hansen, Esq.

      (b)     If to Fulton Sales, to:

            Law Offices Of Michael W. Carmel, LTD.
            80 East Columbus Avenue
            Phoenix, Arizona 85012
            Facsimile: (602) 277-0144
            Attention:  Michael Carmel, Esq.

            Lake & Cobb, PLC
            1095 West Rio Salado Parkway
            Tempe, Arizona 85281
            Facsimile: (602) 523-3001
            Attention:  Gregory Lake, Esq.

      **6.**     **Jurisdiction, Service of Process, No Jury Trial**.  Each of the parties hereto hereby irrevocably and unconditionally consents to submit to the exclusive jurisdiction of the Bankruptcy Court supervising the Bankruptcy Case, for any actions, suits or proceedings arising out of or relating to this Agreement (and agrees not to commence any action, suit or proceeding relating thereto except in such court), and further agrees that service of any process, summons, notice or document by U.S. registered mail to its respective address set forth in <u>Section 5</u> will be effective service of process for any action, suit or proceeding brought against it in any such court.  Each of the parties hereto hereby irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in the aforementioned court and hereby further irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum.  Each party hereto irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, trial by jury in any suit, action or proceeding arising hereunder.

7.    **Governing Law**.  This Agreement will be governed by, and construed and enforced in accordance with, the internal procedural and substantive laws of the State of Arizona applicable to agreements made and to be performed entirely within such State and without regard to the conflicts of law principles thereof.

8.    **Waiver**.   The rights and remedies of the parties to this Agreement are cumulative and not alternative.  Neither the failure nor any delay by any party in exercising any right, power or privilege under this Agreement will operate as a waiver of such right, power or privilege, and no single or partial exercise of any such right, power or privilege will preclude any other or further exercise of such right, power or privilege or the exercise of any other right, power or privilege.  To the maximum extent permitted by law, (a) no claim or right arising out of this Agreement can be discharged by one party, in whole or in part, by a waiver or renunciation of the claim or right unless in writing signed by the other party, (b) no waiver that may be given by a party will be applicable except in the specific instance for which it is given and will not operate as a waiver of, or estoppel with respect to, any subsequent or other failure or noncompliance, and (c) no notice to or demand on one party will be deemed to be a waiver of any obligation of such party or of the right of the party giving such notice or demand to take further action without notice or demand as provided in this Agreement.

9.    **No Oral Modification**.  This Agreement may not be amended except by a written agreement executed by the parties hereto.

10.   **Assignments, Successors**.  Except as otherwise set forth in this Agreement, no party may assign any of its rights under this Agreement without the prior written consent of the other party hereto.  Subject to the preceding sentence, this Agreement will apply to, be binding in all respects upon, and inure to the benefit of the successors and permitted assigns of the parties hereto.

11.   **Severability**.  To the extent that any provision of this Agreement shall be invalid or unenforceable, it shall be considered deleted herefrom and the remainder of such provision and of this Agreement shall be unaffected and shall continue in full force and effect.  In furtherance and not in limitation of the foregoing, if the duration or geographic extent of, or business activity covered by, any provision of this Agreement shall be in excess of that which is enforceable under applicable law, then such provision shall be construed to cover only that duration, extent or activity which may be validly and enforceability covered.

12.   **Captions**.   The article, section and paragraph captions herein are for convenience of reference only, do not constitute part of this Agreement and will not be deemed to limit or otherwise affect any of the provisions hereof or thereof.  Unless otherwise specified, all references herein to numbered articles and sections are to articles and sections of this Agreement, all references herein to schedules are to schedules to this Agreement and all references herein to exhibits are to exhibits to this Agreement.

13.   **Counterparts**.  This Agreement may be executed simultaneously in one or more counterparts, each of which will be deemed to be an original copy of this Agreement.

**IN WITNESS WHEREOF**, each party has caused this Agreement to be duly executed on its behalf by its duly authorized officers as of the day first above written.

FULTON HOMES CORPORATION

By:    */s/ Doug Fulton*

Name:    Douglas S. Fulton

Title:    President


FULTON HOMES SALES CORPORATION

By:    */s/ Norman Nicholls*

Name:    Norman Lee Nicholls

Title:    Chief Executive Officer

# FULTON HOMES SALES CORP EMPLOYEES
## October 15, 2010

| # | Name | Role |
|---|------|------|
| 1 | Mr. Ira A. Fulton | Executive |
| 2 | Douglas Fulton | Executive |
| 3 | Norman Lee Nicholls | Executive |
| 4 | Jeffrey Nadreau | Construction VP |
| 5 | Dennis R. Webb | Marketing/Sales VP |
| 6 | Katharine Barnes | Office Mgr/Contracts |
| 7 | Michaella Ann Wright | Admin support |
| 8 | Kathleen J. Sobczak | Front Desk |
| 9 | Elaine M. Warwick | HR(PT) |
| 10 | Billie J. Saffell | HR(PT) |
| 11 | Nicole M. Wilson | Contracts |
| 12 | Lisa R. Calteux | Contracts (PT) |
| 13 | Steve W. Walters | CFO |
| 14 | Thomas Abraham | Controller |
| 15 | Carri Vande Berg | Asst Controller |
| 16 | Melissa Murphy | Accounting |
| 17 | Tina M. Woten | Accounting |
| 18 | Patrick R. Hindall | IT |
| 19 | Peter F. Venti | IT |
| 20 | Bonnie Williams | Purchasing |
| 21 | Julie L. Foshie | Purchasing |
| 22 | Susan H. Maltz | Construction support (PT) |
| 23 | Amy R. Schwartz | Construction support (PT) |
| 24 | Irving J. Barlett III | Sales Agent |
| 25 | Eric V. Goodson | Sales Agent |
| 26 | Harold G. Beebe | Sales Agent |
| 27 | Mark M. Beehler | Sales Agent |
| 28 | Sam F. Anselmo | Sales Agent |
| 29 | Susan C. Manley | Sales Agent |
| 30 | Robert A. D'Ortenzio | Sales Agent |
| 31 | Edward Lee Holly | Sales Agent |
| 32 | Henry Shannon Adams | Sales Agent |
| 33 | Leslie R. George | Sales Agent |
| 34 | Linn M. Adair | Sales Agent |
| 35 | Larry Robertson | Sales Agent |
| 36 | Thomas R. Lacher | Sales Agent |
| 37 | James Patrick McGuire | Sales Agent |
| 38 | Terise Dunlavy | Sales Agent |
| 39 | Beth Ann Bell | Sales Agent |
| 40 | John R. Burke | Sales Agent |
| 41 | Arthur Ferguson | Sales Agent |
| 42 | Lynn M. Bax | Sales Agent |

# **EXHIBIT B**

## Schedule of Office Furnishings
**October 2010**

|              |                                    |
|-------------:|------------------------------------|
|     $120.00  | Microwaves                         |
|      $60.00  | Mini Fridge                        |
|     $200.00  | Fridge                             |
|     $250.00  | Popcorn Machine                    |
|     $300.00  | Paper Shredders                    |
|     $150.00  | Typewriters                        |
|   $1,700.00  | Plan Storage                       |
|     $270.00  | Lamps                              |
|  $12,000.00  | Copy Machines                      |
|   $7,500.00  | Office Desk/Task Chairs            |
|   $2,000.00  | Side/Guest Chairs                  |
|   $6,000.00  | Conference/Meeting Tables & Chairs |
|   $1,250.00  | Fax Machines                       |
|     $500.00  | "Kitchen" Furniture                |
|     $500.00  | TV's                               |
|   $8,000.00  | File Cabinets                      |
|     $800.00  | Misc Furniture                     |
|     $750.00  | "Art"                              |
|  $10,500.00  | Desks/Credenza's                   |

**$52,850.00**

# Computer Equipment

**October 2010**

Home Office
| | |
|---|---|
| Servers | $10,500.00 |
| Server room Routers/Switches/Power, etc. | $9,500.00 |
| Phone System | $9,250.00 |
| Workstation CPUs | $17,000.00 |
| Workstation Monitors | $7,500.00 |
| Scanners | $6,000.00 |
| TV's | $800.00 |
| Laptops | $1,600.00 |
| Office Printers | $15,410.00 |

Sales Offices
| | |
|---|---|
| Monitors | $6,300.00 |
| Scanners | $14,400.00 |
| Terminals | $5,670.00 |
| VoIP Phones | $6,600.00 |
| Presentation monitors | $18,000.00 |
| Switches PoE | $900.00 |
| Printers | $3,360.00 |

| | |
|---|---|
| Cell Phones | $14,180.00 |
| | **$146,970.00** |

Craig D. Hansen, Esq. (AZ Bar No. 007405) chansen@ssd.com
Sean T. Cork, Esq. (AZ Bar No. 022149) scork@ssd.com
Kelly Singer, Esq. (AZ Bar No. 022024) ksinger@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1 East Washington, Suite 2700
Phoenix, Arizona 85004-2256
(602) 528-4000

Counsel for Debtor-In-Possession

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ARIZONA

In re

FULTON HOMES CORPORATION,

          Debtor.

Chapter 11
Case No. 2:09-bk-1298-GBN

**ORDER GRANTING EMERGENCY MOTION FOR AN ORDER UNDER SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE AUTHORIZING DEBTOR TO ENTER INTO TRANSITION SERVICES AGREEMENT WITH FULTON SALES IN AID OF CONFIRMATION AND CONSUMMATION OF DEBTOR'S REORGANIZATION PLAN**

**Hearing Date: TBD**
**Hearing Time: TBD**

      This matter came before the Court on the *Emergency Motion For An Order Under Sections 105(A) And 363 Of The Bankruptcy Code Authorizing Debtor To Enter Into Transition Services Agreement With Fulton Sales In Aid Of Confirmation And Consummation Of Debtor's Reorganization Plan*, dated October 22, 2010 [Docket No. ___] (the "**Motion**")[1], filed by the above-captioned debtor (the "**Debtor**"), under Sections 105(a) and 363 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), seeking an order

_____

[1]     Capitalized terms not defined in this Order have the same meaning ascribed to them in the Motion.

authorizing the Debtor to enter into, and approving the form of, the <u>Transition Services</u> <u>Agreement</u> (the "**TSA**") dated October 22, 2010, this Court finds that: (i) it has jurisdiction over the matters raised in the Motion under 28 U.S.C. §§ 157 and 1334; (ii) venue of this matter is proper under 28 U.S.C. §§ 1408 and 1409; (iii) this matter is a core proceeding under 28 U.S.C. § 157; (iv) the TSA reflects the a proper exercise of the parties' business judgment; (v) the consideration among the parties supporting each of the transactions contemplated by the TSA is appropriate, sufficient, and it reflects reasonably equivalent value, and does not implicate any fraudulent transfer concerns under the Bankruptcy Code or applicable state laws; and (vi) cause exists for the relief requested in the Motion. Accordingly,

IT IS ORDERED that:

1.      The Motion is GRANTED in its entirety.

2.      The TSA is approved and the Debtor and Fulton Sales are authorized to consummate the transactions contemplated under the TSA.

3.      The Debtor and Fulton Sales are authorized to take all actions necessary to effectuate the relief granted by this Order in accordance with the Motion.

4.      This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**DATED AND SIGNED ABOVE.**