Craig D. Hansen, Esq. (AZ Bar No. 007405) chansen@ssd.com
Sean T. Cork, Esq. (AZ Bar No. 022149) scork@ssd.com
Kelly Singer, Esq. (AZ Bar No. 022024) ksinger@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1 East Washington, Suite 2700
Phoenix, Arizona 85004-4498
(602) 528-4000

Counsel to Debtor-In-Possession

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| In re | Case No. 2:09-bk-1298-GBN |
| FULTON HOMES CORPORATION | Chapter 11 |
| Debtor. | **DEBTOR'S RESPONSE BRIEF** |
| | **Hearing Date: November 8, 2010** <br> **Hearing Time: 9:00 AM** |

## TABLE OF CONTENTS

**Page**

I.   THE BANK GROUP WAIVED ITS NEW OBJECTIONS ............................................... 2

II.  THE BANK GROUP'S NEW OBJECTIONS FAIL TO DEFEAT THE PLAN ............. 4

    A.   The Plan Does Not Gerrymander Its Classes ........................................................... 4

    B.   The Plan Does Not Artificially Impair Classes Of Claims ..................................... 5

    C.   New Fulton Sales Is Not A Successor To Fulton Sales .......................................... 7

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Am. White Cross, Inc.v. Orentzel*, 269 B.R. 555 (D. Del. 2001) ....................................................... 4

*In re Heritage Org., L.L.C.*, 375 B.R. 230 (Bankr. N.D. Tex. 2007) ............................................... 4

*In re LeBlanc*, 622 F.2d 872 (5th Cir. 1980) .................................................................................. 5

*In re Valley View Shopping Ctr., L.P.*, 260 B.R. 10 (Bankr. D. Kan. 2001) .................................. 6

*In re WorldCom, Inc.*, 2003 Bankr. LEXIS 1401 (Bankr. S.D.N.Y. 2003) ...................................... 4

*Poncebank v. Memorial Prods. Co. (In re Memorial Prods. Co.)*,
   212 B.R. 178 (B.A.P. 1st Cir. 1997) .......................................................................................... 6

**OTHER CASES**

*Warne Invests., Ltd. v. Higgins*,
   219 Ariz. 186 (Ct. App. 2008) ......................................................................................... 7, 8, 9

**INTRODUCTION**

The Debtor files this Brief in response to the *Bank Group's Final Brief On Debtor's Fourth Amended Plan* [Docket No. 647] (the "**Bank Group Brief**") filed by Bank of America, N.A., JPMorgan Chase Bank, N.A., Compass Bank, Guaranty Bank and Wells Fargo (collectively, the "**Bank Group**"). After a review of the facts and legal arguments set forth in the Bank Group Brief and in the *Debtor's Brief In Response To The Bank Group's Objections To The Debtor's Fourth Amended Plan Of Reorganization* [Docket No. 648] (the "**Debtor Brief**")[1], the numerous objections raised by the Bank Group to confirmation of the Plan can be distilled to two issues. First, the Bank Group believes that the Debtor has acted in bad faith because the Plan does not pay the Bank Group the contract rate for post-petition interest, and second, the Bank Group asserts that the extraction of Fulton Sales from the reorganization and execution of the TSA make the Plan not feasible, or is somehow akin to a fraudulent transfer. Both issues, however, are used by the Bank Group to insist that it is entitled to recover an amount greater than its allowed claim in contravention of the express provisions of the Bankruptcy Code and binding case law.

These arguments miss the mark. This is a solvent estate, and in this context, the Debtor has a fiduciary obligation to maximize the value of its estate for the benefit of all stakeholders, including equity interests. The Debtor, in accordance with the Bankruptcy Code and binding Ninth Circuit authority, proposes to pay the Bank Group's claim in full with post-petition interest at the federal judgment rate. This is not only mandated by the Bankruptcy Code, but is also consistent with the Debtor's fiduciary duty to maximize the value of its solvent estate for the benefit of all stakeholders. Moreover, both the Debtor and Fulton Sales have determined in their

---

[1] Capitalized terms not defined in this Brief have the same meaning ascribed to them in the Debtor Brief.

reasonable business judgment that it would be imprudent to rely on the belief that Fulton Sales can continue its limited business operations in light of the pending claim against it and operational challenges. There is nothing fraudulent or underhanded about these transactions, and the Plan is feasible even if the TSA is not approved.

In addition to the Bank Group's primary objections, the Bank Group injected new arguments into this confirmation proceeding. The Bank Group asserts for the first time that the Plan cannot be confirmed because: (1) The classification of the Fulton Claim is gerrymandering; (2) the Plan's treatment of other classes artificially impairs those classes in order to obtain an accepting impaired class for the Plan; and (3) New Fulton Sales is liable to the Bank Group under a theory of successor liability. These arguments, although waived under this Court's previous order approving the Debtor's disclosure statement, are briefly addressed in the following memorandum of points and authorities. The Debtor will not address the other arguments raised in the Bank Group Brief here because the Debtor's position on those issues have already been presented to the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   THE BANK GROUP WAIVED ITS NEW OBJECTIONS**.

1.   In the *Order (A) Approving Disclosure Statement; (B) Authorizing Solicitation Of Votes On The Plan; (C) Approving Solicitation Procedures; (D) Scheduling An Evidentiary Hearing On Confirmation Of The Plan; And (E) Approving Form, Manner And Sufficiency Of Notice* [Docket No. 521] (the "**Disclosure Statement Order**"), this Court specifically ordered that:

> **Objections to confirmation of the Plan, if any, must: (a) be in writing; (b) set forth the name of the objector, and the nature of the amount of any claim or equity security interest asserted by the objector against the estate or property of the Debtor; (d) state with particularity the legal and factual basis for such**

> **objection**; and (e) be filed with the Clerk of the United State Bankruptcy Court for the District of Arizona, with a copy to the Honorable George B. Nielsen, United States Bankruptcy Judge, together with proof of service thereof, and served by personal service or overnight delivery, so as to be received no later than 5:00 p.m. Mountain Standard Time, on the Confirmation Objection Deadline by: (i) Squire, Sanders & Dempsey L.L.P., 1 East Washington, Suite 2700, Phoenix, Arizona 85004, <u>Attn: Sean T. Cork, Esq. and Kelly Singer, Esq.</u>, counsel for the Debtor, and (ii) the Office of the United States Trustee for the District of Arizona, 230 North First Avenue, Suite 204, Phoenix, Arizona 85003, <u>Attn: Larry Watson, Esq</u>.
>
> The Court may only consider timely filed written objections to confirmation of the Plan and all objections not timely filed and served in accordance with the provisions of this Order may be deemed waived.

Disclosure Statement Order, pages 6-7, ¶¶ 19-20 (emphasis added).

2. On October 21, 2010, the Bank Group filed the *Objection to Debtor's Fourth Amended Plan Of Reorganization, As Modified, As Of October 19, 2010* [Docket No. 588] (the "**Bank Group Objection**"), which set forth the Bank Group's objections to the Plan. Contrary to the Disclosure Statement Order, the Bank Group Objection did not address or state with particularity any legal or factual basis to support the new objections concerning gerrymandering, artificial impairment, or successor liability arguments. The Bank Group Objection does not even contain the words "gerrymander," "artificial impairment," or "successor liability."

3. There is no basis to find that these objections have been timely asserted under the Disclosure Statement Order. The Plan was filed on September 15, 2010, and slightly modified on October 7, 2010. The Plan at all times has contained the same classification for the claims and interests asserted against the Debtor. Moreover, the Bank Group's objection to the last plan filed by prior counsel raised gerrymandering and artificial impairment arguments that are substantially similar to those raised in the Bank Group Brief now. Furthermore, as set forth in

Section II.F of the Debtor Brief, this Court was well within its authority to shorten the deadline to raise any objection regarding New Fulton Sales, including any successor liability argument, even after the Debtor extracted Fulton Sales from the reorganization and executed the TSA.[2]

4. Under these circumstances, and in accordance with the Disclosure Statement Order, the Debtor respectfully requests that Court deem the objections and arguments raised in Sections C.2, C.3, and E.2 of the Bank Group Brief waived, and prohibit the Bank Group from presenting any evidence or argument on these issues at the confirmation hearing.

II. **THE BANK GROUP'S NEW OBJECTIONS FAIL TO DEFEAT THE PLAN**.

5. Even if the Court finds that the Bank Group has not waived the new objections, the Bank Group's new arguments do not defeat confirmation of the Plan. Simply put, the Bank Group's new objections are irrelevant and without merit.

A. **The Plan Does Not Gerrymander Its Classes**

6. The Bank Group asserts that the Debtor separately classified the Fulton Claim to create an accepting impaired Class 4 (General Unsecured Claims). This is false. The Fulton Claim is a subordinated claim, and it is entirely appropriate to separately classify subordinated claims. Courts have found that the "legislative history of § 510(a) and bankruptcy practice both support [the] conclusion that subordinated claims are usually addressed in bankruptcy by creating separate classes of creditors or other treatment." *Am. White Cross, Inc.v. Orentzel*, 269 B.R. 555, 558-59 (D. Del. 2001); *see also In re WorldCom, Inc.*, 2003 Bankr. LEXIS 1401, at *140 (Bankr. S.D.N.Y. 2003) (approving separate classification of subordinated claims). Courts have also held that it is appropriate to separately classify insider claims, such as the Fulton Claim. *See In re Heritage Org., L.L.C.*, 375 B.R. 230, 302 (Bankr. N.D. Tex. 2007) (concluding

---

[2] As further set forth in the Debtor Brief, the extraction of Fulton Sales and the execution of the TSA were not material modifications to the Plan in any event.

separately classifying insiders was permissible under facts and circumstances because "[f]irst and foremost, the evidence . . . establishes that separate classification would not have been necessary to obtain an impaired, accepting class"); *see also In re LeBlanc*, 622 F.2d 872, 879 (5th Cir. 1980) (insider's superior knowledge of the risks involved in doing business with the debtor, along with the opportunity to protect himself, could suffice as a basis for separate classification).

7.  Assuming, *arguendo*, that the Debtor classified the Fulton Claim into Class 4 (General Unsecured Claims), the result would have been immaterial and irrelevant for Plan voting and confirmation purposes. Whether or not the Fulton Claim accepted the Plan as a Class 4 general unsecured creditor, Classes 1 and 5 voted overwhelmingly to accept the Plan.[3] Reclassifying the Fulton Claim into Class 4, therefore, makes no difference to Plan confirmation.

8.  Moreover, as set forth in the Debtor Brief at Section I.B, placing the Fulton Claim into Class 4 as a general unsecured claim does not *ipso facto* mean that the Bank Group receives payment on the Fulton Claim under the Subordination Agreement. Mr. Fulton -- not the Bank Group -- owns the Fulton Claim, and Mr. Fulton can waive or discharge the Fulton Claim so that he receives no payment whatsoever. In fact, the Debtor understands that Mr. Fulton has agreed to waive and/or forgive the Fulton Claim in its entirety so that no distributions need to be made on account of such claim.

### B. The Plan Does Not Artificially Impair Classes Of Claims

9.  Similar to its gerrymandering argument, the Bank Group asserts that the Debtor artificially impaired Classes 1, 4 and 5 in order to obtain an impaired accepting class. This is also wrong. A debtor may impair a creditor if it has a rational business and economic

---

[3]  Each claimant in Class 1 is a separate subclass under the Plan, and the Debtor received 48 ballots from Class 1. All Class 1 ballots accepted the Plan, and therefore, the Debtor has 48 separate accepting subclasses within Class 1. *See* Ballot Report.

justification.  *See Poncebank v. Memorial Prods. Co. (In re Memorial Prods. Co.)*, 212 B.R. 178 (B.A.P. 1st Cir. 1997) (holding that "a debtor's requirement of cash for continued operation is valid cause to defer payment to creditors and thereby impair their claims"); *In re Valley View Shopping Ctr., L.P.*, 260 B.R. 10, 30-1 (Bankr. D. Kan. 2001) (rejecting artificial impairment argument because debtor had economic justification for impairment).

10. As set forth in the record before the Court and the evidence to be presented at trial, the Debtor's proposed impairment of Classes 1 (Secured Vendor Claims), 2 (Secured Tax Claims), 4 (General Unsecured Claims), and 5 (Queen Creek Claims), is based on the sound and rational business justification of facilitating the treatment of the Bank Group Claim and effectuating the Plan.  The Debtor's proposed repayment for each of these classes is necessary to maintain sufficient cash reserves to meet its Plan obligations after the effective date and to permit the reorganized Debtor to operate its business in a prudent manner for the following reasons.  <u>First</u>, it is imperative that the Debtor have cash to replenish lot inventory to preserve its going-concern value, and the treatment of the non-Bank Group creditors facilitates the funding of sufficient reserves to accomplish that goal.  <u>Second</u>, the Debtor's favorable treatment of the Bank Group in Class 3 also necessitated impairment to the claimants in the other classes.  For example, because the Plan proposes to provide the Bank Group with liens on substantially all of the Debtor's assets (*See* Plan at Section 4.3(B)(3)), the Debtor was required to subordinate the secured vendor claimants' liens to the Bank Group's liens.  <u>Third</u>, payment of creditors in the non-Bank Group classes over time will create a significant and positive impact on the reorganized Debtor's liquidity.  This is especially true with respect to the Secured Vendor Claimants in Class 1, because, as the evidence to be presented at the confirmation hearing will show, the requirement under the Plan that secured vendor claimants provide ordinary trade terms

to the reorganized Debtor will generate millions of dollars in liquidity by extending ordinary trade terms.  <u>Finally</u>, with respect to the Queen Creek Claims in Class 5, real impairment exists here because the Town of Queen Creek has agreed to reduce the amount of allowed unsecured claim by $250,000.

11. Under these circumstances, the Debtor has not artificially impaired any classes, and has a rational business and economic justification for treatment of all claims.  The Bank Group's assertion in this regard is essentially an argument that the Bank Group Plan is a better option for the Debtor and creditors due to its aggressive re-payment scheme.  As detailed in the Debtor Brief at Section II.E, however, the Bank Group Plan is overly-aggressive and it effects a *de facto* liquidation of the Debtor to the detriment of non-Bank Group creditors, equity holders, employees, and other parties in interest.  The Debtor's Plan preserves the going-concern value of the estate for the benefit of all stakeholders.

### C. New Fulton Sales Is Not A Successor To Fulton Sales.

12. The Bank Group argues that New Fulton Sales will be liable for the Guaranty claim asserted by the Bank Group against Fulton Sales.  Whether or not New Fulton Sales is liable to the Bank Group under a theory of successor liability is irrelevant for Plan confirmation purposes.  If the Bank Group believes it has a claim against New Fulton Sales, then it may file a lawsuit against it in state or federal court.  New Fulton Sales can and will defend that litigation.  But a new lawsuit that may or may not be commenced by the Bank Group against New Fulton Sales has nothing to do with the Bankruptcy Code requirements to confirm the Plan.

13. Notwithstanding the fact that this argument does not impact confirmation of the Plan, the Bank Group's reliance on *Warne Invests., Ltd. v. Higgins*, 219 Ariz. 186 (Ct. App. 2008), is misplaced.  To begin with, a careful reading of *Warne* shows that the Arizona court's primary concern in that case arose from the transfer of intangible assets and going-concern value

to the new company for no value. In other words, *Warne* is properly understood as a fraudulent transfer case couched in terms of successor liability. These concerns are not present here. There is no transfer from Fulton Sales to New Fulton Sales. In any event, no intangible assets are transferred under the TSA to anyone, and Fulton Sales has no going-concern value. Moreover, the TSA provides that fair value will be paid for the physical assets to be transferred, which ultimately will be determined by this Court.

14. Several additional factors distinguish *Warne* from the situation here. <u>First</u>, unlike the new company in *Warne*, New Fulton Sales will be liable to the judgment creditor by becoming a borrower under the new credit agreement. **In other words, New Fulton Sales is not escaping liability; New Fulton Sales is liable to the Bank Group for repayment on the allowed Bank Group Claim**. <u>Second</u>, Fulton Sales will keep significant assets that will be available to satisfy claims of its creditors, including the Bank Group's claim, if and when it reduces those claims to a final judgment order. Indeed, Fulton Sales will retain its approximately $10 million in cash, a jet helicopter, and an unencumbered office building located in Tempe, Arizona. <u>Third</u>, the Arizona court in *Warne* found that expert testimony showed that intangible assets belonging to the old company (specifically, good will and going-concern value), were transferred without value. Under the TSA, however, the only assets being transferred comprise mundane computer equipment and office furniture, and no intangible assets or goodwill are transferred under the TSA. <u>Fourth,</u> as set forth in the Debtor Brief at Section II.B, the TSA is not absolutely necessary to continue the Debtor's operations. <u>Finally</u>, the Employees are at will employees that can leave their jobs with Fulton Sales any time. There is nothing prohibiting the Debtor from hiring the Employees with or without the TSA.

15. As described above, the primary concern to the Arizona court in *Warne* was that

going-concern value was transferred to the new company without payment of fair value in exchange. Stated another way, the shut down of the old company and transfer of assets to the new company effected a fraudulent transfer. As set forth in Section II.B of the Debtor Brief, and as will be shown at trial, Fulton Sales has no intangible value or going-concern value. Fulton Sales incurs a significant claim in favor of the Debtor each time it purchases a home under the Option Agreements. The Option Agreements cannot be assumed or assigned in Fulton Sales' bankruptcy, which is highly likely to be commenced by Fulton Sales. If and when Fulton Sales' public reports are amended, homebuyers will likely have rescission rights to cancel sales contracts. Under these circumstances, Fulton Sales' entire existence is economically frustrated by virtue of the Summary Judgment Order, the Option Agreements, and its imminent bankruptcy. It has no intangible value or going-concern value to transfer under the TSA.

16.     As such, the *Warne* decision does not apply to New Fulton Sales. It is not liable to the Bank Group for repayment of the Guaranty claim under any theory.

## CONCLUSION

WHEREFORE, for the reasons set forth above and in the Debtor Brief, the Court should (1) deem the new objections presented by the Bank Group waived and prohibit the Bank Group from presenting any evidence or argument on such new objections, (2) overrule all objections to confirmation of the Plan, (3) confirm the Plan, and (4) grant such other relief as is just and proper.

Dated this 5th day of November, 2010.

**SQUIRE, SANDERS & DEMPSEY L.L.P.**

By: */s/ Sean T. Cork*
Craig D. Hansen, Esq.
Sean T. Cork, Esq.
Kelly Singer, Esq.
1 East Washington St., Suite 2700
Phoenix, Arizona 85004-4498

Counsel to Debtor-In-Possession